RED ACRES IMP. CLUB, INC. *et al. v.* BURKHALTER *et al.*

(*Jackson,* April Term, 1951.)

Opinion filed July 27, 1951.

80

CANADA, RUSSELL & TURNER, of Memphis, for complainant.

CHANDLER, SHEPHERD, HEISKELL & WILLIAMS, of Memphis, for defendants.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This bill was filed by fifteen owners of residences in a residential subdivision in Memphis and by the corporation connected therewith known as Red Acres Improvement Club. The defendants, Dr. Burkhalter and wife, are the owners of a rather handsome residence in that subdivision. Dr. Burkhalter is a physician and maintains a doctor's office in that dwelling. The allegation of the bill is that he is conducting at this dwelling a "medical business house", and that in so doing he is violating the Zoning Ordinance of Memphis, and thereby causing a very substantial depreciation in the value of the residences in that subdivision. The purpose of the bill is to permanently enjoin Dr. Burkhalter and wife from operating in that dwelling "a medical clinic of any kind or general offices for the practice of medicine, or holding himself out to the public in any manner whatsoever as being available for the practice of medicine within" that dwelling.

The Chancellor made a studious analysis of the great quantity of evidence which had been submitted and concluded that Dr. Burkhalter "is carrying on a business or profession of practicing medicine in the residence here involved" beyond the limits permitted under the City's Zoning Ordinance and enjoined the defendants from further so practicing in that dwelling, but with the provision that such injunction should not interfere with his practicing in that dwelling "his profession as far as such practice is accessory only to the main purpose of using that place as a residence". It was the Chancellor's opinion that the professional operation carried on at that dwelling by Dr. Burkhalter amounted to the mainte-

nance of a medical clinic there. The Chancellor said that two of the main factors upon which he based his conclusions were the number of assistants employed, and the large concrete parking space and general set up, all of which will be more hereinafter noticed.

As a matter of deference to the insistences of the contending parties the Court of Appeals discussed numerous phases of the evidence which it did not consider really material to the issue involved, and, after discussing in great detail the facts and law applicable, this opinion concluded "(1) that the office of the defendant doctor in this case was incidental to his dwelling; and (2) the use made of it is not shown to be beyond what was customary in such offices"; that, therefore, the defendants were not violating the Zoning Ordinance. Accordingly, the Chancellor was reversed and the bill dismissed.

Certiorari was granted and the case has been ably presented on all sides in this Court by brief and oral arguments. In as much as the opinion of the Court of Appeals responds at length to practically all of the contentions made, this Court will confine its discussion and conclusions to that which it conceives to be determinative of the case.

Dr. Burkhalter's residence is located in an area which the Memphis Zoning Ordinance puts in an "'A' Residence District". There is no question but that under the express provisions of that ordinance, as will be hereinafter more explicitly pointed out, a physician may maintain some kind of a professional office in his residence in that district. Under this Zoning Ordinance in those areas classified as a "'B' Residence District" a medical clinic may be maintained. Necessarily, therefore, the Zoning Ordinance intends to make a distinction between a doctor's office and a medical clinic. However, the ordinance

does not undertake to define what it, the ordinance, intends the distinguishing feature or features shall be.

Dr. Burkhalter is a pediatrician. He has an uptown office where he receives patients from 8 A. M. to 4 P. M. He receives patients in the office at his dwelling from 4 P. M. to 8 P. M., and an average of somewhere between fifteen and twenty-five patients per day come during those hours to his residence office and are given professional attention by the doctor.

That part of the residence occupied by Dr. Burkhalter, his wife and three children as their home consists of seven rooms and two baths downstairs, and two bedrooms upstairs. That part of his residence in which he maintains his professional office consists of a reception room and two small rooms in which he sees patients. There are to be found in these rooms such paraphernalia as would be expected in a doctor's office. There is also a lavatory, a wash basin, a built in cabinet and a refrigerator in which he keeps those medicines pertinent to the treatment of the physical ills in which he specializes. Thus, the physical situation above described manifests the fact that the building is primarily and mainly a residence, with the doctor's office incidental.

No other doctor is associated with Dr. Burkhalter in his residence office. In this office there is one lady who is the secretary and stenographer. Her hours are from 8 A. M. to 4 P. M. The doctor's records are kept there and she has supervision of them. The usual telephone is also there. A receptionist is on duty from 4 P. M. to 9 P. M. and for two or three months in 1949 there was another young lady who assisted in this office. They were dressed as trained nurses, but they were not nurses. They rendered such assistance to the doctor as would

ordinarily be expected of such employees in such an office.

The doctor's name plate appears at some appropriate place on the outside of the office to be seen by those who may be looking for his office or for a doctor of his kind. Adjacent to the residence and a part of the premises is a concrete space used by patients and others for the parking of their automobiles while in the office or residence. The space is sufficient for the parking of perhaps fifteen to twenty-five cars.

The Court is supposed to know and take note of that which is generally known. It is generally known that the office above described is in character and operation a modern doctor's office in a city or large town, or medium sized town, for that matter. Hardly such an office could be found that did not contain the number of rooms, furnishings, equipment, etc. similar to those in the office which Dr. Burkhalter maintains at his residence. It would be most unusual not to find one or more ladies employed in such an office. Now the question is does the maintaining of such an office by Dr. Burkhalter in his residence violate the Memphis Zoning Ordinance? Unless it does, the fact that the maintenance of such office at that place may substantially depreciate the value of nearby property can make no difference.

In considering this Zoning Ordinance with reference to the facts of this case, there must be kept in mind and applied the law so well stated in the opinion of the Court of Appeals as follows: "Zoning ordinances, being in derogation of common law and operating to deprive the owner of property of the use thereof which would otherwise be lawful, are to be strictly construed in favor of the property owner. Yokley: Zoning Law and Practice, page 3, Section 3, and cases cited. They

are not to be extended by interpretation to cases not clearly within their scope and purpose, and exceptions favoring property owners are to be liberally construed in their favor. 62 C. J. S. [, Municipal Corporations page] 480, Section 226(16)-A; *City of Little Rock* v. *Williams* [, 206] Ark. [861], 177 S. W. (2d) 924; *Landay* v. *McWilliams,* [173] Md. [460,] 196 A. 293, 114 A. L. R. 984; *440 East 102nd Street Corp.* v. *Murdoch* [Murdock] [285] N. Y. [298,] 34 N. E. (2d) 329; *State ex rel.* [Bollenbeck] v. *Shore Wood Hills,* [237] Wis. [501,] 297 Nev. [N. W.] 568; and Cf. *Central Drug Co.* v. *Adams,* 184 Tenn. 541, 544[, 201 S. W. (2d) 682.]''

While it is probably unnecessary to copy herein the entire applicable Section of the Zoning Ordinance, perhaps it is better to do so. That Section reads as follows:

''Section 3

'A' Residence District

''Be it further ordained, that in the 'A' Residence District no building or premises shall be used and no building shall be hereafter erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses:

''1. One-family dwellings

''2. Two-family dwellings

''3. Churches

''4. Schools

''5. Libraries

''6. Farming and Truck Gardening

''7. Accessory buildings, including one private garage or private stable when located not less than 60 feet from the front lot line, or a private garage in a (fireproof) compartment as a part of the main building.

"8. Uses customarily incident to any of the above uses when located on the same lot and not involving the conduct of a business; including also home occupations engaged in by the occupants of a dwelling not involving the conduct of a business on the premises, and including also the office of a physician, surgeon, dentist, musician or artist, when situated in the same dwelling used by such physician, surgeon, dentist, musician or artist as his or her private dwelling; provided no name plate exceeding one (1) square feet in area, containing the name and occupation of the occupant of the premises, nor a sign exceeding eight (8) square feet in area appertaining to the lease, hire or sale of a building or premise, nor advertising sign of any other character shall be permitted in any 'A' Residence District."

It will be noticed that under Item 8 of the above quoted Ordinance provision a "physician, surgeon, dentist, musician or artist", may have "an office" in his residence in an "'A' Residence District". Absolutely implicit in such a provision is the authority to use that office in the manner in which a physician, surgeon, dentist, musician, or artist would be expected to use such an office. The Zoning Ordinance does not indicate the contrary.

■ Every one knows that a doctor uses his office as a place to which patients are privileged to come for examination and treatment. It necessarily follows that it was intended by this ordinance for patients who desired the services of Dr. Burkhalter to come to his office at his residence and there be examined and treated. In fact, the ordinance expressly authorizes Dr. Burkhalter to inform the public that he is maintaining an office there for that purpose in that it authorizes him to display there at some conspicuous place his name plate informing the public what his "occupation" there is. There is nothing

in the ordinance which justifies an inference that it was intended to limit the number of patients who might see the doctor there on a given day. So it is immaterial to the question here as to whether the doctor had one call or twenty-five a day at this office.

If the doctor may use this office it has to follow as a matter of ordinary reasoning that he may do those things which make its use available in a reasonable manner. Otherwise, the ordinance in this respect would not make sense. Now in a doctor's office, as every one knows, there is expected to be the paraphernalia, instruments, furniture and medicines necessary for the examination and treatment of the patients that may call at his office for professional services of the character he is offering to render. So also is it proper that he have a janitor, a receptionist, or other non-professional employee usually employed in such an office. There is no inference in this ordinance that the doctor may not have any of these reasonably necessary articles or employees. Indeed, such a provision would have destroyed the privilege given in that it would permit him to have an office but deny him, for all practical purposes, the privilege of using it.

The first seven items of Section 3 of the Zoning Ordinance enumerate uses to which premises in an "A" Residence District may be put. Then follows Item 8 wherein it is provided that in addition to those seven uses premises may "also" be put to uses (1) customarily incident to those seven uses when *"not involving the conduct of a business"*, and (2) home occupations of a dwelling *not involving the conduct of a business* on the premises". (Emphasis supplied) Then follows (3) "and including also the office of a physician, surgeon, dentist, musician or artist." There does not follow (3)

the expression which follows (1) and follows (2), to-wit, "not involving the conduct of a business".

The situation in which we thus find the expression "not involving the conduct of a business" necessarily suggests to the mind the query as to why the ordinance followed (1) and (2) with the expression each time,—"not involving the conduct of a business", but omitted it as to (3). "The natural conclusion is that as (the) expressions are varied, they were altered because (the) intention in both cases was not the same". *Simpson* v. *Smith*, 33 Tenn. 394, 396.

Moreover, if the ordinance, after authorizing in a dwelling "the office of a physician", had followed that authorization as it did in (1) and (2) with the expression "not involving the conduct of a business" these provisions of the ordinance would have been repugnant and contradictory. The word "office" (it being the word used in the ordinance) is universally regarded as meaning "a room or building in which a person transacts his business or carries on his stated occupation". Funk & Wagnalls New College Standard Dictionary, Em' Pha. Type Edition.

So, it would have been thoroughly illogical for the ordinance to provide that the doctor may have in his dwelling a place in which to carry on his occupation (his "office") and then follow that with the provision "not involving the conduct of a business". The conclusion seems inescapable that it was the intention of the ordinance not to follow the authorization of an office for the doctor in his dwelling with the provision "not involving the conduct of a business". Or, affirmatively stated, it was the intention of the ordinance to authorize a doctor to maintain an office in his residence for the carrying on there of his occupation.

For the reasons hereinabove stated, this Court is of the opinion that the office which this record shows Dr. Burkhalter to be maintaining at his dwelling does not violate the Memphis Zoning Ordinance unless, in any event, this office is shown by this record to be a medical clinic.

A number of lay witnesses called Dr. Burkhalter's office a clinic. The only expert testimony on the subject is that of the doctor himself. He says that it is not a clinic, and gives a definition which does not include the office which he is maintaining at his residence.

The opinion of the Court of Appeals quoted extensively from numerous high authorities as to the definition of a clinic. It is unnecessary to repeat those quotations here. It is sufficient to say that Dr. Burkhalter's office does not come within the definition given by any of these authorities.

In as much as we are referring to a medical clinic, it would seem that the most logical place to go for a definition is a medical dictionary. As shown in the opinion of the Court of Appeals, the 21st Edition of The American Illustrated Medical Dictionary by Dorland defines a clinic as ''an establishment where patients are admitted for special study and treatment by a group of physicians practicing medicine together''. It is apparent that Dr. Burkhalter's office does not come within that definition.

As pointed out by the Court of Appeals the burden was upon the complainants to establish it as a fact that this office of Dr. Burkhalter is a medical clinic. We agree with the Court of Appeals that the complainants have failed to carry this burden. In fact every definition of a medical clinic which has been made available to the Court forces the conclusion that this office is not a medical clinic.

The judgment of the Court of Appeals reversing the decree of the Chancellor and dismissing the suit and taxing petitioners here with all costs is affirmed.

NEIL, C. J., did not participate in this case.