CITY OF KNOXVILLE *v.* BROWN.

(*Knoxville,* September Term (May Session) 1952.)

Opinion filed June 5, 1953.

Rehearing denied July 17, 1953.

WINICK & MORRISON and MAX M. MORRISON, all of Knoxville, for City of Knoxville, plaintiff in error.

ELY & ELY, of Knoxville, for defendant in error.

504

Mr. Justice Burnett delivered the opinion of the Court.

We have for determination two cases of the same style and involving the identical question. These cases were consolidated below and tried together and one opinion will be rendered here applicable to both.

The City of Knoxville through its officers swore out two warrants against H. P. Brown charging that he violated "an ordinance or ordinances of the said City, by, Viol. city Ord. 123 (zoning ord.) on or about the—day of—, 1952, at or near 101 Catalpa St." Then followed other necessary averments. The City Judge fined Brown in each instance for a violation of the ordinance. On appeal the matter was tried before the Circuit Judge without the intervention of a jury and both cases were dismissed. The City has duly and seasonably appealed.

The question involved is the alleged violation of City Zoning Ordinance 123 of the City of Knoxville. A certified copy of the ordinance was filed as an exhibit to the stipulation of facts in the record. The stipulation among other things says that Brown, the owner of the property located at 101 Catalpa Street, Knoxville, Tennessee, has for the past year or 18 months "had in his yard, which was a part of a lot 50 x 150 feet as many as nine automobiles and trucks which he has placed there for the purpose of removing parts and re-assembling or making racing cars; that H. P. Brown drives racing cars in and around Knoxville on what is known as dirt tracks, and does this

as a hobby; that the said Brown does not repair nor work on cars for other persons or make any repairs for others than himself and upon his own vehicles.''

The Zoning Ordinance was passed some years ago to regulate and restrict the location and use of buildings, structures and land in the City of Knoxville. Under the terms of the Ordinance the place owned by Brown is classified as District ''A'' ''One Family District''. Under Section 3 of the ordinance it is provided:

'' 'A' One-Family District

''In the 'A' One-Family District no building *or land* shall be used and no building shall be *hearafter* erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses:

''1. One-Family Dwellings.

''2. Churches.

''3. Schools, Elementary and High.

''4. Museums, Libraries, Parks, Playgrounds or Community Centers owned and operated by the City of Knoxville.

''5. Golf Courses.

''6. Farming and Truck Gardening.

''7. Nurseries and Greenhouses for the propagating and cultivating of plants only, provided, however, that before permit is issued, there are on file in the office of the Building Inspector, the written consents of the owners of the majority of the area of all real estate within three hundred (300) feet of any part of the premises.

''8. Accessory Buildings, including one private garage or private stable when located not less than sixty (60) feet from the front lot line nor less than five (5) feet from any other street line, or a private garage constructed as a part of the main building.

"9. Uses customarily incident to any of the above uses when situated in the same dwelling, including home occupation such as the office of a physician, surgeon, dentist, musician or artist. Provided no name plate exceeding one (1) square foot in area, nor bulletin boards, nor signs exceeding twelve (12) square feet in area appertaining to the lease, hire or sale of a building or premises, nor advertising sign of any other character shall be permitted in any One-Family District."

It will immediately be observed that nowhere in the permitted use of property of class "A—One-Family District" is it made permissible for the owner of the property or others as far as that is concerned, to conduct an operation such as is shown to be conducted by Brown herein. This being true it seems to us that clearly under the Doctrine of ejusdem generis that where these general words are used as they are herein, followed by a designation of particular things or subjects to be included or excluded as the case may be, the inclusion or exclusion will be presumed to be restricted to the particular things or subjects. Here we have clearly designated under the ordinance that the "land" shall only be used for the particular items above quoted. This being true Brown was violating this provision of the ordinance when he used his yard or lot in this neighborhood to assemble and put together eight or nine automobiles. It does not require any stretch of the imagination, when reading the ordinance as above quoted, to see immediately that by the acts of Brown the ordinance is violated.

The clear legislative intent is shown by the words of the Act as quoted. The mere mentioning of the things that could be done on this lot necessarily implies the exclusion of others. Zoning ordinances or regula-

tions such as this, are the subject of construction to ascertain their meaning and effect. It is generally held that such an ordinance should be strictly construed. *Red Acres Imp. Club, Inc.,* v. *Burkhalter,* 193 Tenn. 79, 241 S. W. (2d) 921. The construction though of such ordinances is governed by the general rules applicable to the construction of other statutes and ordinances. 62 C. J. S., Municipal Corporations, Sec. 226, page 480. When we apply this rule of construction to the ordinance now before us and under the principle of ejusdem generis as above indicated it seems clear to us that the acts committed by Brown are violative of the ordinance. Of course in the construction of an ordinance of the kind we should have regard both for the object sought to be attained by the ordinance and to the general structure of the ordinance as a whole. It is perfectly obvious from reading the ordinance of what the property of the defendant in error was zoned for "A One-Family District". Districts of the kind certainly do not permit the use of the property to the extent that it was being used by Brown in this instance. Then too when we read the language of the ordinance applicable clearly the acts here being committed were not granted. Even the things which were made permissible to be done in this district were limited to a certain supervision. And nowhere can it be inferred that what is here done was allowed to be done under the ordinance.

Certain questions are made in the assignments by the City's not being allowed to amend the warrant after the case was in the Circuit Court and after the case had been tried and disposed of by alleging specifically the violation of sub-section A of the Ordinance which is above quoted. We think, of course, that the trial judge was in his discretion in not allowing this amendment at the

time that it was asked for but since it had been conceded that the question here was whether or not there is a violation of the ordinance as a whole, and Brown was charged with violating the ordinance as a whole, that an interpretation of this ordinance was really what the lawsuit was appealed to this Court for and this being true we have, as above indicated, written what we think the ordinance means. We likewise think that under this meaning of the ordinance that there was a violation thereof by Brown.

 Since this specific section of the ordinance was not plead in the warrant or request for an amendment therof not asked for within a seasonable time it is entirely possible that its meaning escaped the trial court. We say this because the argument here on behalf of the City was largely over the question of interpretation of what "garage", "private garage" and "public garage" meant. As a matter of fact, as we see it, the question of a garage has nothing to do with the case at all but the case turns entirely on what interpretation should be given Section 3 of the Ordinance above quoted. This being true we will reverse the case and tax the City with all costs of appeal. The cost below will await the outcome there. As a result the case must be remanded to the Circuit Court for further disposition consistent with this opinion.

GAILOR, Justice, dissents.

GAILOR, Justice (dissenting).

I am forced to dissent from the majority opinion. In my view, the doctrine of ejusdem generis has no application to a proper construction of the ordinance under consideration. That doctrine simply stated is that in a contract or statute where a series of specific terms concludes

with a general term, that the general term shall, in its construction, be limited to the kind (genus) of the enumerated special terms. There is no such language in· the ordinance before us here.

The defendant is using the property in controversy for a one-family dwelling as permitted by sub-section 1 of the ordinance, and under sub-section 9, as an incident of such use as a one-family dwelling, defendant is using his front yard for his hobby, which is the assembling and disassembling of automobiles.

Sub-section 9, which permits "uses customarily incident to any of the specified uses" does not undertake to specify what uses are customarily incident to the main use. As to whether or not the assembling and disassembling is a use customarily incident to use as a one-family dwelling, the ordinance is silent and ambiguous. Since the ordinance is in derogation of the common law right of free use by the property owner, it will not be extended by implication, and doubts will be resolved against the City and in favor of the property owner. *Red Acres Imp. Club* v. *Burkhalter,* 193 Tenn. 84, 241 S. W. (2d) 921.

In my view, the judgment of the Circuit Court should be affirmed.

On Petitions to Rehear.

BURNETT, Justice.

The property owner has filed a very courteous, dignified and forceful petition to rehear in this cause. This petition is largely based upon the dissenting opinion of Mr. Justice Gailor filed in this cause. Many authorities are cited which apply the rule or doctrine of ejusdem generis. The City has likewise filed a petition to rehear, questioning our taxation of costs in this Court to the City. This petition filed on behalf of the City can

be disposed of in a sentence. "The question of adjudging costs is a matter within the reasonable discretion of the Court." *Runions* v. *Runions*, 186 Tenn. 25, 32, 207 S. W. (2d) 1016, 1019, 1 A. L. R. (2d) 242.

■■ The "doctrine of Ejusdem Generis" is not a rule of law but is merely an aid to the judicial mind in the interpretation of a statute or other writing. "The doctrine of Ejusdem Generis based on the maxim expressio unius est exclusio alterius is: that, where general words are used, followed by a designation of particular things or subject to be included or excluded as the case may be, the inclusion or exclusion will be presumed to be restricted to the particular thing or subject. Ballentine's Law Dictionary, 2nd Edition, Page 24. Literally translated, the phrase, expressio unius est exclusio alterius, means: the expression of one thing is the exclusion of another (of the same kind). Whilst the rule is more frequently applied to the construction of statutes and wills, it equally is applicable to other instruments of writing. *E. H. Emery & Co.* v. *American Insurance Co. of Newark, N. J.*, 177 Iowa 4, 158 N. W. 748." *Prudential Insurance Co. of America* v. *Fuqua's Adm'r,* 314 Ky. 166, 234 S. W. (2d) 666, 670, 22 A. L. R. (2d) 803.

The object of the rule is stated in 59 C. J. 982, Sec. 581, thus:

"The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. The words 'other or any other' following an enumeration of particular classes are therefore to be read as 'other such like' and to include only others of like kind or character."

In our original opinion we quoted in full the provision of the ordinance applicable herein. Before the first nine sub-sections of the section of the ordinance applicable it is provided in substance that in a One-Family District no building ''or land'' shall be used except for one of the nine enumerated things following. This ordinance of course is a prohibitive ordinance in the first instance which is followed by the nine sub-sections of things that may be built or for which the land in this district may be used. It was our idea that by so providing, the things done by Brown in this instance not being specified therein, that then what he did was necessarily excluded under the applicable doctrine of ejusdem generis as based on the maxim above quoted. These things were not mentioned in the ordinance as those permitted to be used in such a district. We feel that the doctrine as here applied is applicable. Of course as heretofore said, it is not a rule of law but a mere aid to our interpretation of what is meant by the ordinance.

▉▉▉▉▉ Use restrictions of the kind herein attempted to be enforced upon real property find their justification in some aspect of the police power, exerted for the public welfare. When such use restrictions are applied the ordinance must either clearly and expressively prevent such use or such use must clearly appear upon a proper and judicial determination of the ordinance. The majority of this Court feels and concludes that the ordinance herein clearly expresses the provision that property in this neighborhood is to be used for a one-family dwelling with the nine enumerated exceptions one of which is the one-family dwelling and such things as customarily and ordinarily go with a one-family dwelling. In determining what a one-family dwelling may necessarily be used for we must use our common sense, judicial and personal

knowledge of what such dwellings are customarily and ordinarily used for—what the ordinary man of the street would consider a one-family dwelling to be. When we so consider this ordinance it seems to us that the use of a lot of this size for the tearing down and assembling of as many as nine automobiles at a time, that this, is clearly outside the use of a one-family dwelling. It is true that under the stipulation here this use is stipulated to have been made by Brown as a hobby but when hobbies become a violation of the clear intention of the ordinance then the statute prohibits the hobby. We of course can think of all kinds of hobbies, many of which would customarily and ordinarily be considered as a proper use for a one-family dwelling but when a hobby reaches the proportion of the destruction of the neighborhood by the use of assembling and tearing down of numerous automobiles, in this case nine, this goes far beyond any common sense idea of what a One-Family Dwelling might be used for.

We have obviously spent considerable time in discussing this very interesting question in conference. We have likewise made a considerable investigation in addition to the very interesting and able briefs of counsel. We, though, are constrained to our original holding that the acts of Brown herein were a violation of this ordinance and should therefore be prohibited. For the reasons expressed the petitions to rehear of both Brown and the City are denied.