620 P.2d 376

**Kathryne L. DAVIS, Appellant,**

v.

**NEW MEXICO STATE BUREAU OF REVENUE, Appellee.**

**No. 4610.**

Court of Appeals of New Mexico.

Oct. 23, 1980.

Kathryne L. Davis, pro se.

Jeff Bingaman, Atty. Gen., Richard M. Kopel, Edward F. Barnicle, Jr., Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

SUTIN, Judge.

Taxpayer, perhaps an elderly lady, filed a New Mexico income tax return for the year 1976. During that year, Taxpayer was an out-patient of the Lovelace Clinic and all medical services were furnished to her in the facilities of the Clinic. In her return, she stated "medical expenses of $5,793.00", some $900.00 in excess of her wages at the University of New Mexico. She claimed a medical tax rebate of $232.07. The rebate was approved by the Commissioner and paid to Taxpayer.

Two years later, the Director audited Taxpayer and determined that $4,969.50 of the claimed "medical expense" paid to the Clinic was not allowable in computing the amount of the rebate. Accordingly, "to make the punishment fit the crime," the department issued an assessment of $199.13, plus penalty and interest for income tax to recover that part of the medical rebate paid to Taxpayer.

Unable to employ an attorney, Taxpayer filed a protest pro se and appeared pro se in the hearing and in this appeal.

The seven page Decision and Order of the hearing examiner illustrates his dedication to these important legal problems. Taxpayer was ordered to refund $199.13, but penalty and interest were abated. Taxpayer appeals. We reverse.

Item 13 of the Decision and Order states in part:

The real question here is whether services performed by the Clinic for the Taxpayer are hospital services.

Section 7-2-15, N.M.S.A. 1978 provides for a credit against personal income. If the tax credit exceeds the taxpayer's income tax liability, the excess shall be refunded to the taxpayer. Excluded from allowable deductions for medical expenses are "amounts paid for hospital services not subject to the Gross Receipts and Compensating Tax Act * * *."

For the year 1976, the Bureau of Revenue sent Taxpayer Medical And Dental Rebate Instructions. Subsection (A) showed that Taxpayer was eligible to "claim a tax rebate for gross receipts taxes which were imposed on certain *medical * * * expenses* during the taxable year." [Emphasis added.] Subsection (D) provided that "Payments for hospital services and drugs administered *while in the hospital*" could *not* be counted in claiming a rebate. [Emphasis added.]

Item 11 states in part:

* * * True, the instructions specifically refer to services and drugs administered while in the hospital. However, the services for this Taxpayer were performed "while in" the Clinic. The Taxpayer was not justified in concluding that all services for out–patients are allowable in computing the medical rebate.

This item poses the real question:

Is an out–patient "while in the Clinic," an in–patient "while in the hospital?"

The Lovelace–Bataan Medical Center consists of, among other institutions, the Lovelace Clinic and the Bataan Memorial Hospital.

*United States v. State of New Mexico*, 536 F.2d 1324 (10th Cir. 1976) involved enforcement of trust provisions which affected the Miners' Hospital of New Mexico. The resolution of one issue necessitated the definition of the term "hospital." Omitting citations, the court said:

* * * When, as in the case here, a term is not defined by the statute, it is appropriate for the court to interpret the word in accordance with its ordinary, everyday meaning. When used in the applicable sense, "hospital" connotes "an institution or place where sick or injured persons are given medical or surgical care." It is generally understood that at a minimum a hospital affords surgical care. [Id. 1327–28.]

The court then set forth under note 4 the definition of "General Hospital" for licensing purposes set forth in New Mexico Department of Public Health Licensing Regulations, Part 2, as amended, Aug. 20, 1965:

A general hospital has capacity for at least ten (10) beds and provides, on a continuing 24–hour basis, in–patient facilities and resources for maternity care and for medical and surgical care to the sick and injured, and has laboratory and X–ray facilities and services. It provides at least one currently licensed professional nurse on duty at all hours. [Id. 1328.]

In medicine, a clinic is "an institution or station often connected with a hospital or medical school for the examination and treatment of out patients." Webster's New International Dictionary, p. 423 (1966). "The American Illustrated Medical Dictionary by Dorland defines a clinic as 'an establishment where patients are admitted for special study and treatment by a group of physicians practicing medicine together'." *Red Acres Imp. Club v. Burkhalter*, 193 Tenn. 79, 241 S.W.2d 921, 925 (1951).

The Lovelace–Bataan Medical Center operates in the same fashion as Mayo Clinic. *New York Life Ins. Co. v. Ince*, 27 S.W.2d 476 (Mo.App.1930) involved the cancellation of a policy of insurance for false representations made with reference to observation or treatment in a hospital. The insured had been under observation and treatment at the Mayo Clinic. The insured contended that his answer to the question was correct because the Mayo Clinic was not a hospital. The court said:

* * * Technically speaking, a "clinic" is not a hospital * * * in the sense, at least, that it does not provide beds for its patients, yet a clinic is usually, if not always, an adjunct of a hospital or medical college, and when connected with a hospital is as much a part thereof as all other departments of the institution devoted to the observation or treatment of ills. * * It seems to follow that *while the clinic is used for the examination of patients before placing them in the hospital*, it is yet a part of the hospital. [Emphasis added.] [Id. 480.]

Although the distinction between a clinic and hospital is made clear, a half century ago one court deemed it advisable to hold

that, when an insured is questioned as to his eligibility for life insurance, "in the clinic" was included within the scope of "in any hospital."

We do not deem the insurer–insured relationship equivalent to that of the State–Taxpayer. The former involves a private business transaction without instructions. The latter is a public relationship between the government and one of its constituents in which the Director of the tax division is empowered and directed to issue all instructions necessary to implement and enforce any provision of any law administered by its agency. Section 7–1–5, N.M.S.A. 1978. These instructions are not regulations or rulings. "[I]nstructions are other written statements or directives of the director not dealing with the merits of any tax *but otherwise in aid of the accomplishment of the duties of the director."* Subsection (B)(4). Any such instruction "issued by the director is presumed to be in proper implementation of the provisions of the revenue laws administered by the division." Subsection (G).

The "Income Tax Act," §§ 7–2–1—7–2–22, and the Tax Administration Act, §§ 7–1–1—7–1–82, N.M.S.A. 1978, fail to set forth "the duties of the director" other than the promulgation of "regulations, rulings, instructions or orders necessary to implement and enforce any provision of any law administered by the division," § 7–1–5(A), and "Investigative authority and powers," § 7–1–4. To aid in the accomplishment of his duties, instructions issued to "every resident individual," upon whom an income tax is imposed, § 7–2–3, should be in ordinary, everyday language understood by the man or woman on the street. "While in the hospital" is such language. The Director fulfilled his duty to the Taxpayer in the preparation of her income tax return. The Director's duty cannot be accomplished, however, by taking clear language such as "while *in* the hospital," and place an interpretation on the phrase which suits the fancy of the Director. The duty of the Director is to assist the Taxpayer, not to engage in a figurative form of entrapment.

The Director instructed the Taxpayer that the statutory provision of "hospital services" meant "while *in* the hospital." We agree with Taxpayer who argued:

Throughout the 1976 tax form instructions, * * * items not subject to the Gross Receipts Tax, and therefore not applicable to the rebate, are specified *only* in terms of hospitals * * *. This is a specific delineation; *"hospital" involves in–patient, and/or emergency room services.* This commonly understood in–patient connotation of the word hospital is borne out by its use in the institutions * * *.

Taxpayer has expressed a reasonable and fair interpretation of the phrase "while *in* the hospital."

An out–patient "while in a clinic" is not an in–patient "while in a hospital."

Reversed. The Director shall set aside his Decision and Order, and enter a Decision and Order in favor of Taxpayer by reason of this opinion.

Taxpayer is also entitled to recover all costs expended in this appeal. The Supreme Court has held that, upon reversal, cost of transcript is not a recoverable cost item because § 7–1–25(B), N.M.S.A. 1978 provides that the transcript shall be prepared "at the expense of appellant." *New Mexico Bureau of Rev. v. Western Electric Company,* 89 N.M. 468, 553 P.2d 1275 (1976). "At the expense of appellant" is not a rigid rule applicable in every appeal by the taxpayer. It is the only method by which an appeal can be brought to this Court. The Legislature did not intend, however, to burden a taxpayer upon reversal where the taxpayer has been harassed over a refund of $199.13. A case can arise where a taxpayer has won a battle over a refund of $199.13 and lost the war if the expense of the transcript is in excess of the amount saved. The burden of "expense" in each case must be decided according to principles of equity and fair play exercised by the Bureau and the taxpayer in a determination of tax liability.

A cost bill does not appear in the record. The only cost expended by Taxpayer ap-

pears to be a filing fee of $20.00. Taxpayer shall recover costs in the sum of $20.00.

WOOD, C. J., specially concurs.

ANDREWS, J., concurs with WOOD, C. J.

WOOD, Chief Judge (specially concurring).

Because the facts dispose of this appeal I do not reach the question of the meaning of the income tax instructions, I do not give any effect to the grasping attitude of the Bureau that is revealed by the facts, and I do not consider the cost to the State of the pursuit of this taxpayer through an audit, an administrative hearing and this appeal.

The Bureau contends that § 7–2–15, N.M. S.A. 1978 is the applicable statute. The applicable portion of that statute authorizes a tax credit of:

> (2) four percent of the gross amount of expenditures in New Mexico for medical and dental expenses allowable in computing the deductible medical and dental expenses for federal income tax purposes, excluding from the allowable deductions amounts paid for hospital services not subject to the Gross Receipts and Compensating Tax Act and health and accident insurance premium costs.

It is not disputed that the taxpayer had medical expenses of $5,793. The portion of these expenses "paid for hospital services not subject to the Gross Receipts and Compensating Tax Act" are excluded in reckoning the amount of the deduction for medical expenses. Whether any of the undisputed medical expenses was a payment for hospital services was a question of fact.

It is undisputed that the medical expenses were incurred by the taxpayer for medical services furnished to the taxpayer as an outpatient of the Lovelace Clinic in Albuquerque. On the basis that the Lovelace Clinic is a part of the Lovelace Medical Foundation, and on the basis that another part of the Foundation is a hospital, the Bureau contended, and the hearing officer agreed, that taxpayer's payments were payments for hospital services.

This approach disregards what the taxpayer in fact paid for and makes the deduction depend on the legal structure of the organization receiving payment. This approach disregards the language of the statute, which is worded in terms of payment for hospital services. The Bureau's authority to exclude medical expenses is statutory. *Rainbo Baking Co. of El Paso v. Commissioner of Rev.*, 84 N.M. 303, 502 P.2d 406 (Ct.App.1972). It had no authority to exclude medical expenses on the basis of the legal status of the Medical Foundation; its authority to exclude depends on whether, as a matter of fact, the medical expense was a payment for hospital services.

The only evidence of what was paid for was presented by the taxpayer. She testified that she was never hospitalized; that the $5,793 expense represented the charges of the Lovelace Clinic for one physician; that no tests or X–rays were involved; that the services were received at the clinic and not at the hospital; that she would make an appointment to see the doctor; that the appointment would be kept at the doctor's office in the clinic and, at the conclusion of this office visit, she left; that at the time these services were rendered the clinic occupied one building completely and shared the occupancy of another building with the hospital.

The only inference from this evidence is that none of the medical expenses were in payment for hospital services. On this basis, I concur in the result reached by Judge Sutin.

ANDREWS, J., concurs.