

# FILED

October 7, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE


DON BRUNETTI, )
                                           )

        Plaintiff/Appellant,   )      Appeal No.
            )     01A01-9803-CV-00120

vs.                    )
            )    Williamson County Circuit

BOARD OF ZONING APPEALS OF )    No.  97085
WILLIAMSON COUNTY, et al.,    )
            )

      Defendants/Appellees. )


### APPEAL FROM THE CIRCUIT COURT
### FOR WILLIAMSON COUNTY


### THE HONORABLE HENRY DENMARK BELL PRESIDING


MARK C. ADAMS
136 4th Avenue South
Franklin, Tennessee 37064

ATTORNEY FOR PLAINTIFF/APPELLANT


DOUGLAS A. BRACE,
REBECCA C. BLAIR
Ortale, Kelley, Herbert & Crawford
Third Floor, Noel Place
200 Fourth Avenue, North
Nashville, Tennessee 37219

ATTORNEYS FOR DEFENDANTS/APPELLEES

**AFFIRMED AND REMANDED**

PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, P. J.
CAIN, J.

# OPINION

This is an appeal of the trial court's affirmance, in a writ of certiorari action, of a decision of the Williamson County Board of Zoning Appeals interpreting and applying provisions of the Williamson County Zoning Ordinance. The Appellant, Mr. Brunetti, is a neighbor of Mr. Brian Sanders, and objects to the operation of two grain bins (sometimes referred to as silos) on Mr. Sanders's 5-acre parcel in Williamson County, which is zoned "Estate." The Board of Zoning Appeals interpreted state statute and local ordinance to allow this "agricultural" use. We affirm.

In 1994, Brian Sanders erected two grain bins on his 5-acre parcel located in Williamson County after consulting with Lee Sanders, Codes Compliance Director for Williamson County, who advised Brian Sanders that the grain bins would constitute an agricultural use, thereby exempting the land from local zoning ordinance by operation of state statutory provisions. He further advised Mr. Sanders that agricultural uses were permitted in the zoning classification applicable to the property.

Don Brunetti is an adjacent neighbor of Brian Sanders and objects to the grain

bins. After other actions, by letter dated August 15, 1996, Mr. Brunetti requested from the Community Development Director an interpretation of the Williamson County Zoning Ordinance as it related to Mr. Brian Sanders's use of his land, specifically the grain bins.

The Williamson County Planning Director, Mr. Joe Horne, issued a written interpretation on September 13, 1996, to the requestor, Mr. Brunetti. Mr. Horne concluded that Mr. Sanders's property did not qualify as a farm and that, therefore, the bins were not an agricultural use allowed on property zoned Estate.

Brian Sanders was notified on October 15, 1996, that he must discontinue his use (operation of the grain bins) within 90 days, appeal Mr. Horne's interpretation, or seek a variance. Brian Sanders filed a request with the Board of Zoning Appeals requesting review of Mr. Horne's interpretation of the zoning ordinance or, alternatively, a variance to allow him to continue use of his grain bins.

In his written interpretation, the Planning Director noted that an inspection of the property had indicated no apparent agricultural use except for the grain bins. After the Planning Director's interpretation and before the Board's hearing, Brian Sanders planted three-fourths to one acre of his 5-acre parcel in wheat which will be dried and stored in the grain bins.

The Board of Zoning Appeals conducted a hearing on December 19, 1996, overturned Mr. Horne's interpretation, and found that Brian Sanders's grain bins were permitted and that Mr. Sanders was in compliance with the zoning ordinance. The Board, therefore, rejected the earlier written interpretation of the Planning Director which was based on a set of facts that had changed by the time of the

hearing.

Mr. Brunetti filed a petition for writ of certiorari in the Circuit Court of Williamson County. The trial court affirmed the Board's decisions, finding that the Board did not act in an illegal, arbitrary, or capricious manner.

I.

Local zoning decisions regarding the interpretation and application of existing zoning ordinances to a specific set of facts are reviewable by the courts under Tenn. Code Ann §27-9-101 *et. seq*. The proper vehicle for judicial review of a decision of a board of zoning appeals is the common law writ of certiorari. *See McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990); *Hoover v. Metropolitan Bd. of Zoning Appeals*, 955 S.W.2d 52, 54 (Tenn. App. 1997).

Under the common law writ of certiorari, the court's inquiry is limited to whether the board (1) exceeded its jurisdiction, (2) acted illegally, arbitrarily, or fraudulently, or (3) acted without material evidence in the record to support its decision. *See Hoover*, 955 S.W.2d at 54; *see also Hemontolor v. Wilson County Bd. Of Zoning Appeals*, 833 S.W.2d 613, 616 (Tenn. App. 1994).

In this matter the Board of Zoning Appeals (hereinafter "Board") was called upon to interpret Williamson County's Zoning Ordinance (hereinafter "Ordinance") and to review the Planning Director's interpretation. Tenn. Code Ann. §13-7-109 gives county zoning appeals boards the authority to hear and decide appeals where it is alleged there is error in any order, requirement, decision, or refusal by any administrative official in the enforcement of any zoning ordinance. That statute and Tenn. Code Ann. §13-7-107 also authorize the board the make special exceptions

to zoning regulations.

The Ordinance provides a procedure for a citizen to request from the Planning Director an interpretation of any provision of the Ordinance, including land use issues. The Planning Director's written interpretation is reviewable by the Board. Williamson County Zoning Ordinance §§ 10200 and 10300.

Thus, the Board clearly acted within its jurisdiction, and Mr. Brunetti does not claim otherwise. His claim is that the Board acted without any material evidence in the record to support its decision and, consequently, acted in an arbitrary and capricious manner.

## II.

Testimony at the hearing established that the area around Mr. Sanders's property is largely agricultural, with livestock and other uses associated with an agricultural area. Mr. Sanders's property is zoned "Estate," which is described in the Ordinance as follows:

> This district is intended to promote the development of areas with an ESTATE character by putting homes on large lots and allowing horses and other animals to be kept on the lots. Development is intended to be served by septic systems and the densities are such that sufficient area is available for a replacement septic field, should failure occur.

Commentary:    This district accommodates estate-type residential development at very low densities to ensure that these areas have a low enough density that septic systems can be maintained. The poor soils and history of septic failures in Williamson County make it obvious that one acre lots (which have been the standard lot size for septic systems in the past) cannot adequately protect residents from septic failures. Many of these areas have had to be annexed in order to supply sewer service as a means of protecting the health and investment of home owners.

Among the permitted uses on Estate zoned land is "**agricultural**," which is defined in the Ordinance as follows:

**Agricultural uses** are **farms** (and farm residences), that involve orchards, raising of livestock, dairy cattle, horses, or poultry, and truck farming. Nursery and forestry operations are not considered agricultural uses. Family member housing is considered an agricultural use. Farm employee housing is regulated separately. (emphasis added).

The Zoning Ordinance defines **farm** as follows:

> A parcel of land meeting either of the following conditions: (1) a parcel of land equal to or exceeding fifteen (15) acres in size and used for residential and agricultural purposes; or (2) a parcel of land equal to or exceeding two (2) acres in size and less than fifteen

> (15) acres in size and meeting the following conditions: the parcel must be **used for** residential and **agricultural purposes** including farming, dairying, pasturing, **agriculture,** horticulture, floriculture, viticulture, animal and poultry husbandry, and the necessary accessory uses for packing, treating, or storing the produce; provided however, that the operation of any such accessory uses shall be secondary to that of normal **agricultural** activities, and provided further that the above uses shall not include the raising of more than two (2) animal units per acre. (emphasis added).

Because Mr. Sanders's property is between 2 and 15 acres and is used for residential purposes, the question presented to the Board was whether it was also used for agricultural purposes.

## III.

The evidence in the record shows that Mr. Sanders is a farmer who grows grain, including corn, soybeans, and wheat, on leased acreage in the vicinity of his five-acre parcel which is the subject of this appeal. The two grain bins on that parcel were originally used to treat and store the grain grown elsewhere by Mr. Sanders and transported by him to the bins. Although he may have grown hay on his five-acre

parcel at some time in the past, at the time of the Planning Director's written interpretation, Mr. Sanders was not growing a crop on that parcel.

This absence of crop production on the property is the basis for the first of Mr. Brunetti's arguments that the grain bins are not permitted under the Ordinance. His position is that the treating and storage of grain is not an agricultural use in and of itself and that such use is, at most, an accessory use.

The storing and drying of grains, he asserts, is permissible only if it is "accessory" to the cultivation of grain on the same piece of property.

The Planning Director, in his memorandum interpretation, agreed, at least with regard to Mr. Sanders's failure to grow crops on his land. The Director noted:

> At this writing, it does not appear that the tract in question would qualify as a "farm". This judgment is reached on the basis that while a residence is present on this site, the qualifying agricultural use of the property has not taken place. The bins themselves do not appear to supply the necessary criteria. If any measure of this site was producing the grain stored in the bins, then the bins would qualify under the phrase "the necessary accessory uses for packing, treating, or storing the produce."

He further found that "with the finding that no agricultural use is taking place on this site per the definition of 'farm,' the current use of the bins would appear to be beyond the scope of the Zoning Ordinance. This could be remedied as simply as having the property-owner commence production of an on-site agricultural product that would be stored and processed in the subject bins."

The record indicates that by the time of the hearing before the Board, Mr. Sanders had a portion (3/4 to 1 acre) of his property under cultivation in wheat. At the close of the hearing herein, the Planning Director indicated that at the time of his

inspection of the property, there was no crop production going on and he was then unaware that there had been production in the past. He reaffirmed that had there been evidence of crop production on the site that was being stored in the bins, his findings would have been different. Thus, the Planning Director interprets the Ordinance's definition of "farm" as having been met by the cultivation of some portion of the parcel.

IV.

Our analysis of this case must begin with defining the limitations on our scope of review. The scope of judicial review under the common law writ of certiorari is narrow and is limited to whether the inferior board or tribunal has exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *See Petition of Gant*, 937 S.W.2d 842, 844-45 (Tenn. 1996) (quoting *McCallen*, 786 S.W.2d at 638, citing *Hoover Motor Exp. Co. v. Railroad & Pub. Util. Comm'n.*, 195 Tenn. 593,604, 261 S.W.2d 233, 238 (1953)). Judicial review under the common law writ does not involve judicial review of the correctness of the lower tribunal's decision. *See Powell v. Parole Eligibility Review Bd*, 879 S.W.2d 871, 873 (Tenn. App. 1994). Common law writ of certiorari is simply not a vehicle which allows the courts to consider the intrinsic correctness of the legal or factual conclusions of the Board. *See Yokley v. State*, 632 S.W.2d 123 (Tenn. App. 1981). Thus, to the extent Mr. Brunetti's arguments are in actuality an attack on the correctness of the Board's interpretation of the Ordinance, those arguments are beyond our scope of review.

However, under the common law writ, courts may examine a lower tribunal's decision in order to determine if it is arbitrary or capricious. Since judicial review

under the Administrative Procedures Act also includes review to determine if an agency's decision is arbitrary or capricious, authorities describing that standard are helpful in defining those terms. In *Jackson Mobilphone Co. v. Tennessee Public Serv. Comm'n.*, 876 S.W.2d 106 (Tenn. App. 1993), this court discussed the standard for determining whether a decision is arbitrary, stating that an agency decision not supported by substantial and material evidence in the record is arbitrary and capricious and, even where adequate evidence is found in the record, an agency's decision may still be arbitrary and capricious if caused by a clear error in judgment. *See id*. at 110 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974)). The court further stated:

> A court should not apply Tenn. Code Ann. § 4-5-322(h)(4)'s "arbitrary and capricious" standard of review mechanically. In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error in judgment. An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion. (internal citations omitted).

*Id*. at 110-111.

In the case before us, there is little dispute about the facts of Mr. Sanders's use of his property. What is disputed is the interpretation of the Ordinance and its application to the facts presented. The interpretation of a zoning ordinance and its application to a particular set of facts are, in the first instance, questions for decision by local officials. Courts are hesitant to interfere with decisions by local zoning officials unless clearly necessary and will not substitute their judgment for that of the local zoning officials. *See Hoover*, 955 S.W.2d at 54 (citing *McCallen*, 786 S.W.2d

at 639); *Whittemore v. Brentwood Planning Comm'n.*, 835 S.W.2d 11, 15 (Tenn. App. 1992).    However, while courts may defer to local officials' interpretations where the interpretation is fairly debatable and the ordinance is ambiguous, they will set aside an interpretation which is arbitrary and capricious, contrary to the drafters' intent, or which undermines the ordinance's validity. *Whittemore*, 835 S.W.2d at 16.

We interpret these and other relevant authorities to mean that our role is not to provide the initial interpretation of the Ordinance.    Rather, we are to determine whether the Board's interpretation and application are arbitrary or capricious, or, alternatively, are based on a "course reasoning" or "exercise of judgment" and do not undermine the Ordinance.    If the Ordinance may reasonably be interpreted more than one way, we will not substitute our judgment of the more preferable interpretation as long as the board's choice has a reasoned basis.    The Iowa Supreme Court has stated the standard applicable there to review of decisions of a local zoning board as "whether the evidence in a close case might well support an opposite finding is of no consequence, for the district court cannot substitute its judgment for the board of adjustment."    *Helmke v. Board of Adjustment, City of Ruthven*, 418 N.W.2d 346, 352 (Iowa 1988). We think that statement also describes the role of Tennessee courts where the interpretation of an ordinance is "fairly debatable."

In our examination of the Board's interpretation and application, a few basic principles governing construction of zoning restrictions must also be taken into consideration.    Zoning ordinances are an attempt to limit the use of land by a property owner, in derogation of the common law, and, therefore, are to be strictly

construed in favor of the property owner. *See Rogers Group, Inc. v. County of Franklin*, No. 01A01-9110-CH-00378, 1992 WL 85805 at *8 (Tenn. App. Apr. 29, 1992) (no Tenn. R. App. P. 11 application filed); *see also Anderson County v. Remote Landfill Services, Inc.*, 833 S.W.2d 903, 909 (Tenn. App. 1991); *Red Acres Improvement Club, Inc. v. Burkhalter*, 193 Tenn. 79, 84, 241 S.W.2d 921, 923 (1951). Local zoning ordinances must comply with state law, be within the zoning authority granted by state statute, and not infringe upon the general policy of the state. *See Nichols v. Tullahoma Open Door, Inc.*, 640 S.W.2d 13, 18 (Tenn. App. 1982).

## V.

The fact that Mr. Sanders was growing crops on his parcel at the time of the hearing redefines the issue in this case. Cultivating crops is clearly an agricultural use. Mr. Brunetti argues this is not enough. He argues that the Ordinance's definition of farm authorizes "the necessary accessory uses for packing, treating, or storing the produce," that operation of the grain bins is, at most, an accessory use and, therefore, must be "secondary to that of normal agricultural activities."

The Board and Mr. Sanders assert that treating, drying, and storing grain grown by Mr. Sanders is, in and of itself, "agriculture" and a use for "agricultural purposes," as the Ordinance's definition of farm requires, and is not an accessory use. It is their position that Mr. Sanders is a farmer who lives on property on which he produces crops, and that he stores and treats those crops as well as crops he grows on other property. They provided to the Board and to this court numerous authorities for the proposition that the terms agriculture, agricultural uses, and

agricultural purposes include the continuum of activities necessary to produce a crop and get it to market, including storing and treating it.

For example, in *Helmke v. Board of Adjustment, City of Ruthven*, 418 N.W.2d 436 (Iowa 1988), the Supreme Court of Iowa considered whether a grain storage facility built by a farming cooperative as a supplement to the farm members' "on farm" storage facilities fell within the "agricultural purposes" exemption of a statute. The objecting landowner argued that the agricultural exemption should not be available because the co-op neither planted, cultivated, nor harvested the crops stored therein. The court, however, found that the grain storage "could reasonably be characterized as part of a farming continuum which begins with the planting of the crop and continues through its cultivation and harvesting" and that the grain storage was part of the agricultural function. *Id.*, 418 N.W.2d at 351-352. *See also Blum v. Fischer*, 1981 WL 9680 (Ohio App. 1981) (barn for storing farm produce and equipment is an integral part of farming operations and is not "incidental" to an agricultural use, because it is an agricultural use in and of itself.)

Similarly, Corpus Juris Secundum's definition of "agriculture" includes a statement that "in a broader sense, [it] is the science or art of the production of plants and animals useful to man, and in its general sense, it includes gardening or horticulture, fruit growing, and storage and marketing." 3 C.J.S. *Agriculture* § 2 (1973).

An A.L.R. annotation covers the topic "Construction and application of terms 'agricultural,' 'farm,' 'farming,' or the like, in zoning regulations." 97 A.L.R.2d 702 (1964). Treatises also report various decisions on whether certain activities are "

agriculture" or "farming". *See* 6 Yokley, Zoning Law and Practice § 35-26 (1980); 2 Young, Anderson's American Law of Planning § 9.47 (4[th] ed. 1996).

Our review of these and other authorities leads us to conclude that it is fairly debatable whether Mr. Sanders's storing and treating of grain, especially grain grown elsewhere, is an agricultural use. There is a reasoned basis for the conclusion that it is an agricultural use and for the conclusion that it is not. However, we need not decide that issue. The Ordinance's description of treating and storing produce as necessary accessory uses requires us to consider Mr. Brunetti's final argument and the law of accessory uses.

VI.

Even if the storing and drying of grain is not considered as an agricultural use by itself, Mr. Sanders's parcel clearly meets the definition of farm in the Ordinance since he lives on it, grows crops on it, and stores grain on it. Therefore, we think the real issue is the effect of the ordinance's statement that accessory uses must be secondary to the use for "normal agricultural purposes." As stated above, Mr. Brunetti asserts that the storing and treating of grain is, at most, an accessory use. The capacity of the bins is much greater than would be necessary to dry and store the volume of grain grown on the property. Therefore, Mr. Brunetti asserts, the storing is neither "necessary" nor "secondary" to the growing. In essence, his position is that the Ordinance prohibits structures like the grain bins even on farms if they are not measurably necessary to the specific activity on that farm.

To have meaning, a use which is expressly permitted by a zoning resolution may impliedly include those other uses which make the permitted use available in a

reasonable manner. *See Rogers Group*, 1992 WL 85805 at \*8 (citing *Red Acres*, 241 S.W.2d at 923). The test for determining whether a use is accessory is not whether the use is essential to the permitted use but, rather, is whether the use is customarily incident to the permitted use. *See id*. (citing 101A C.J.S. *Zoning and Land Planning* § 148 [§ 176].

Buildings used for storing crops are permissible as an accessory use to that cultivation, since they are customarily incident to it. The Ordinance specifically recognizes them as such. Although the Ordinance's definition of farm requires that such uses be "secondary" to "normal agricultural uses," the Ordinance nowhere defines "secondary." In the land use context, it would be reasonable to measure secondariness by the amount of land devoted to each of the uses. The record includes photographs[1] which clearly show that the two grain bins occupy only a small portion of the five-acre lot. The residence and other outbuildings occupy the parcel as well as the acreage, some of which is now under cultivation.

Mr. Brunetti's argument that the bins are larger than necessary for the grain grown on the five-acre parcel relates to size of the structures, not their use. We find no authority in the Ordinance for the Board to limit the size of structures for uses accessory to agricultural uses. In *Southard v. Biddle*, 305 S.W.2d 762 (Ky. App. 1957), the appellate court agreed with the trial court's comment that, "It would be a harsh interpretation to hold under the facts of this case that the defendant, although entitled to house or store in the structure the tobacco grown on the lot on which the barn is located, cannot utilize the same building for the storing of his tobacco grown on the nearby lot." *Id*. at 763. While we take no position on the harshness of a

similar interpretation here, we are of the opinion that the Ordinance cannot be read to prohibit structures for accessory uses to agriculture from being larger than might be absolutely necessary at any particular time. More significantly, we find no authority to allow local zoning officials to inquire into the production and storage methods of farmers beyond the questions necessary to determine whether a use is accessory. Zoning regulations are to be interpreted strictly and in a way that favors the landowner's use of her or his property.

In addition, any such regulation, if it did exist, would run afoul of state statute. The statutes empowering counties to enact zoning regulations includes a limitation on the counties' authority in the area of agricultural uses. Tenn. Code Ann. § 13-7-114 provides:

> **Construction - Building permits - Agricultural use of land.** This part shall not be construed as authorizing the requirement of building permits nor providing for any regulation of the erection, construction, or reconstruction of any building or other structure on lands now devoted to agricultural uses or which may hereafter be used for agricultural purposes, except on agricultural lands adjacent or in proximity to state federal-aid highways, public airports or public parks; provided, that such building or structure is incidental to the agricultural enterprise. Nor shall this chapter be construed as limiting or affecting in any way or controlling the agricultural uses of land.

We are of the opinion that, at the least, this statue prohibits local zoning regulations and officials from regulating a structure which is incidental to an agricultural enterprise. Since the storing and treating of crops is accessory to cultivation, the buildings used for such purposes are, within the meaning of the statute, incidental to an agricultural enterprise.

We note that this interpretation is consistent with the Planning Director's

interpretation that if crops were being grown on the parcel, the bins would not be subject to permitting or other requirements.

## VII.

Mr. Brunetti also asserts that the Board acted illegally and arbitrarily by hearing Mr. Sanders's request since that request was filed more than thirty days after the Planning Director's written interpretation was issued. Williamson County Zoning Ordinance requires that appeals from staff decisions to the Board of Zoning Appeals must be made within 30 days of the decision. The memorandum constituting the interpretation by Joe Horne, the Planning Director, was dated September 13, 1996. Brian Sanders filed his request for appeal on December 2, 1996.

Mr. Sanders was not a party to the original interpretation request and did not receive a copy when it was sent to the requestor, Mr. Brunetti. By letter dated October 15, 1996, Mr. Sanders was notified that a Planning Commission interpretation had been issued that his operation of grain bins on his property was not in compliance with Williamson County Zoning Ordinance. He was ordered to cease operation of the bins within 90 days. The final paragraph of the letter advised Mr. Sanders of his options to appeal the interpretation to the Board of Zoning Appeals or to seek a variance. No deadline was given for these options. After receipt of the notice, Brian Sanders's representative talked to the Code Compliance Director and confirmed the 90-day deadline.

At the hearing, the County Attorney advised the Board that the 30-day deadline should not be imposed against Brian Sanders since the letter was at least ambiguous and since Mr. Brunetti would have further options to contest any ruling.

The Board followed this advice. We think the Board had the authority to do so and that their decision was reasonable in light of the communication to Mr. Sanders, the fact that Mr. Sanders was not a party to the original request, and the ambiguity regarding the applicability of the ordinance's 30-day limit to an "interpretation" as distinguished from a "decision".

The Board of Zoning Appeals has the authority to waive the 30-day deadline even if it is applicable. Tenn. Code Ann. § 13-7-107(b) and Williamson County Board of Zoning Appeals Bylaws authorize the Board to make exceptions to the terms of the zoning ordinance that they judge will be "in harmony with the general purpose and intent." The Board was told that the issue of agricultural uses was one of importance to the community such that the Board itself ought to interpret the provisions. Additionally, two county employees had taken different positions on the issue, supporting the need for the Board itself to resolve the issue.

In addition, Mr. Sanders's request was also for a variance, which would only be necessary or relevant if the Planning Director's interpretation was correct and upheld by the Board. There is no deadline or time limit on seeking a variance, although Mr. Sanders filed his request within the ninety days given him to cease operation of the grain bins. Having made timely application for a variance, Mr. Sanders was entitled to have heard the issue of whether he needed a variance.

## VIII.

In conclusion, we find that the Board's decision that Mr. Sanders's operation of his grain bins was allowed by the Williamson County Zoning Ordinance was based on sufficient evidence and authorities presented at the hearing, was a

reasoned exercise of judgment, and, therefore, was not arbitrary, capricious, or unlawful.

Therefore, we affirm the trial court's decision and remand for any further proceedings which may be necessary. Costs are taxed to Appellant, Mr. Brunetti.


_____

PATRICIA COTTRELL, JUDGE


CONCUR:


_____

BEN H. CANTRELL,
PRESIDING  JUDGE, M. S.


_____

WILLIAM B. CAIN, JUDGE