[Civ. No. 47160. Second Dist., Div. Five. Dec. 9, 1976.]

ROBERT SECHRIST, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SAN ANTONIO JUDICIAL
DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

738

**COUNSEL**

Donald G. Orosz for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

John H. Larson, County Counsel, and Charles J. Moore, Deputy County Counsel, for Real Party in Interest and Respondent.

**OPINION**

**STEPHENS, J.**—Appellant Robert Sechrist seeks review of a judgment discharging his petition for a writ of prohibition which was filed in an effort to halt the prosecution of a misdemeanor complaint charging him with several violations of the Los Angeles County zoning ordinance.

In the criminal action now pending before the Municipal Court of the San Antonio Judicial District, appellant stands charged, in three separate counts of violating three sections of Los Angeles County Ordinance Number 1494—the zoning ordinance. Count I charges that the defendant violated section 202 by "unlawfully [storing] inoperable motor vehicles, commercial vehicles, and junk on [his] property, zone R-1 [single-family residential property], in the unincorporated area of Los Angeles County." Count II accuses the defendant of violating section 742[1] by rendering his garage "inaccessible for automobile parking by the storage of inoperable vehicles and junk." The final count of the complaint alleges violations of sections 706 and 202 for the storage of "commercial and military type trailers, a commercial and military type generator, and a military type vehicle on [his] premises . . . ."

The appellant's primary contention on appeal is that sections 202 and 706 of the Los Angeles County Zoning Ordinance are vague and uncertain in violation of the constitutional guarantee of due process of law and should therefore be held invalid. This attack is twofold. First, it is claimed that these sections fail to provide specific guidelines as to which uses are prohibited in an R-1 residential zone. Second, it is argued that the permitted use of property in an R-1 zone for "single family residences" is a vague and undefinable criterion which fails to meet constitutional muster. Appellant also contends that the complaint fails to charge any acts made criminal by the zoning ordinance. We disagree with both of appellant's contentions, and, based upon our construction of this ordinance, uphold its constitutional validity and the sufficiency of the charges in the complaint.

I

The Los Angeles County zoning ordinance contains two general use restrictions which subject violators to penal sanctions.[2] Section 706

---

[1]Appellant does not contest this count of the complaint or the validity of section 742. That section of the Los Angeles County Zoning Ordinance provides as follows: "Every single-family residence on a lot or parcel of land having an area of less than one acre per dwelling unit, shall have . . . one or more garages . . . with a capacity for not less than two passenger automobiles, *conveniently accessible.* . . ." (Italics added.)

[2]The penal provision in the ordinance, section 113, provides, in pertinent part, as follows: "Every person violating any provision of this ordinance . . . is guilty of a misdemeanor . . . punishable by a fine not to exceed Five Hundred Dollars or by imprisonment in the County Jail for not to exceed six months, or by both such fine and imprisonment. Each separate day or any portion thereof during which any violation of this ordinance occurs . . . constitutes a separate offense . . . ."

proscribes the use in *any zone* of any structure or premises "contrary to the provisions of [the] ordinance." Section 202 more particularly proscribes the use in a *residential zone* of any premises "except as hereinafter *specifically permitted* . . . . " (Italics added.) ▇ Appellant's first complaint is directed at the *form* of these proscriptions. He contends that they lack the requisite certainty under due process standards insofar as they require a prospective user of property to search all 809 sections of the ordinance to discover if a particular use is permitted, and to ascertain whether a particular use is forbidden. A closer examination of this ordinance and the applicable due process standards of certainty in penal statutes reveal the shortcomings of these claims.

The form which this zoning ordinance takes, in listing *permitted* uses within given zones and prohibiting other uses within those zones, is quite common. (See Hagman, Larson & Martin, Cal. Zoning Practice (Cont. Ed. Bar 1969) § 6.5, pp. 200-201 [hereinafter CEB, Zoning].) ▇ The restriction of a single-family residential zone, in particular, to specified types of uses deemed to be compatible in such an area, is unquestionably a valid exercise of the police power. (See *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114, 54 A.L.R. 1016]; Gov. Code, § 65851; *Miller* v. *Board of Public Works,* 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479].) The mere fact that the owner of premises within such a zone is required to search the zoning ordinance to discover the scope of permitted uses, cannot alone render the ordinance vague and uncertain. If, however, a permitted use is ambiguous in itself, then naturally the range of impliedly proscribed uses is equally unclear. But a specific itemization of proscribed uses within a given zone established by the ordinance cannot be said to be mandated by due process, if, from a fair reading of the ordinance, the acts proscribed are reasonably clear. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 60 [216 P.2d 859].) Further examination of the instant ordinance compels this conclusion.

▇ Three basic types of uses, universal among zoning regulations, are set forth in this zoning ordinance for property situated in any given zone—primary, accessory, and conditional uses. (See CEB, Zoning, § 6.6, p. 201.) The appellant's property is located in a zone designated as R-1—the Single-Family Residential Zone. The three types of permissive uses in R-1 zones are set forth in the ordinance as follows: (1) primary uses are for single-family residences, family-home day care for children, and foster family homes for children and aged persons (§ 207); (2)

accessory uses are for the storage of construction materials, the rental of rooms in a house, the maintenance of signs, and the erection of accessory buildings, detached living quarters, and attached servants' quarters (§ 207.3); (3) conditional uses, which are subject to prior approval, or permit, range from temporary carnivals to riding and hiking trails (§§ 207.7, 208). These uses are restricted and regulated by various provisions in the ordinance relating to: the keeping of certain animals (§§ 205, 205.5, 206); height limits (§ 208.5); front and side yard setbacks (§§ 209, 210, 210.2; § 451 et seq.); area requirements (§§ 210.4, 211.2, 211.4, 211.6; § 721 et seq.); vehicle storage (§§ 211, 742); and the display of signs (§ 785 et seq.). The foregoing regulations contained within the zoning ordinance clearly mark out the basic parameters of permitted use of property within a single-family residential zone and, concomitantly, make reasonably clear the range of uses which, under sections 202 and 706 of the ordinance, would be prohibited.

Appellant's objection to the form of this ordinance relates also to the myriad of activities intimately associated with maintaining a home, such as the cultivation of a lawn or garden, the maintenance of a swimming pool or a hobby, or the storing of the family automobile, are not expressly permitted. Often such activity is characterized as an "accessory use" of residential property and is deemed to come within the general accessory use provision which typically allows uses "customarily incidental" to primary use of the property. (See CEB, Zoning, §§ 8.2, 8.3, pp. 320-322.)[3] Yet this ordinance has no such residuary clause within its accessory use provision. From our subsequent interpretation of the residential use clause this vagary in form cannot be deemed, however, to foreclose such uses.

## II

Appellant challenges the constitutional sufficiency of the language in section 207 of the zoning ordinance, which permits the use of property in an R-1 zone "for . . . residences, single family," contending that such language, standing alone, is too vague to apprise a potential user of those uses which are necessarily proscribed. He claims that such terminology fails to provide an ascertainable standard of conduct, and that there

---

[3]The instant ordinance provides a general definition of what constitutes an "accessory use," as follows: " 'Accessory Use' shall mean a use customarily incidental to, related and clearly subordinate to a principal use established on the same lot or parcel of land, which accessory use does not alter said principal use." (Los Angeles County Ordinance No. 1494, § 120.)

exists no outside source—either the dictionary, common law, case law, or common understanding which can clothe the language with the requisite certainty. In essence, then, appellant is arguing that sections 202 and 706 of the ordinance, insofar as they punish "non-residential" uses of property located in a residential zone, fail to comport with due process standards of certainty.

■ It is well settled that " 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process.' " (*People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974], quoting *Connally* v. *General Const. Co.,* 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) The certainty required of penal statutes has been articulated as: "reasonable certainty," not mathematical exactitude (e.g., *Solander* v. *Municipal Court,* 45 Cal.App.3d 664, 667 [119 Cal.Rptr. 609]), certainty of such a degree as to provide a *standard of conduct* for those whose activities are proscribed, and a *standard of guilt* for those called upon to apply the statute (*People* v. *McCaughan, supra.*) Often the requisite standards of certainty can be fleshed out from otherwise vague statutory language by reference to any of the following sources: (1) long established or commonly accepted usage; (2) usage at common law; (3) judicial interpretations of the statutory language or of similar language; (4) legislative history or purpose. (E.g., *People* v. *Poulin,* 27 Cal.App.3d 54, 60 [103 Cal.Rptr. 623].) ■ While the dangers of discriminatory enforcement and ex post facto punishment posed by vague penal provisions must be considered in construing statutory language (see *In re Newbern,* 53 Cal.2d 786, 796 [3 Cal.Rptr. 364, 350 P.2d 116]), liberal regard will be given to legislative intent so as to give effect to the salutary objects of the particular law. (See *People* v. *Weger,* 251 Cal.App.2d 584, 590 [59 Cal.Rptr. 661]; *People* v. *Beaugez,* 232 Cal.App.2d 650, 656-657 [43 Cal.Rptr. 28].) Zoning regulations are no exception to the foregoing principles. (See *People* v. *Binzley,* 146 Cal.App.2d Supp. 889, 890-891 [303 P.2d 903].)

■ In construing the "residential use" terminology in this ordinance we need not reach a comprehensive definition; rather, we need only establish a practical construction of the language based upon "our common sense, judicial and personal knowledge of what [single-family] dwellings are customarily and ordinarily used for—what the ordinary man of the street would consider a one-family dwelling to be." (*City of*

*Knoxville* v. *Brown* (1953) 195 Tenn. 501 [260 S.W.2d 264, 269].) Contrary to appellant's assertion, there are a wealth of zoning cases as well as a reservoir of common law pertaining to residential uses of homestead property which lend some definitive criteria to the terminology "residential use." Moreover, zoning regulations as an exercise of the police power have certain universally recognized objectives which provide further guidance in defining the scope of activity encompassed by a "residential use" of property.

■ Zoning laws such as the instant ordinance, establishing exclusive residential zones, are enacted for the general health, safety and welfare (see *Miller* v. *Board of Public Works, supra,* 195 Cal. 477; CEB, Zoning, § 5.1, pp. 127-128),[4] and, more particularly, for the stabilization of the economic and social aspects of a neighborhood, and the promotion of aesthetic considerations. (See *Burk* v. *Municipal Court,* 229 Cal.App.2d 696, 702-703 [40 Cal.Rptr. 425]; CEB, Zoning, §§ 5.6, 5.7, 5.17, pp. 131-132, 139-141.) Homogeneous residential zones are established to promote family life—to provide a safe, healthful and aesthetic environment in which to raise a family—and those uses of property deleterious to this goal are necessarily excluded. (See *City of Beverly Hills* v. *Brady,* 34 Cal.2d 854, 857 [215 P.2d 460]; *People* v. *Gold,* 6 N.Y.S.2d 264, 269.) "Esthetic considerations are only a part of the basic object and purposes of a comprehensive zoning ordinance, and the more important consideration is that of preserving the basic character of a residential neighborhood for residential purposes." (*Burk* v. *Municipal Court, supra,* at p. 703.) The term "residential" is normally used in contradistinction to "commercial" or "business." (*Seaton* v. *Clifford,* 24 Cal.App.3d 46, 51 [100 Cal.Rptr. 779] (construing a deed restriction); see *People* v. *Gold, supra.*)[5] ■ Clearly, the predominantly commercial use of property within a residential zone would be prohibited. But even a semblance of commercial activity, incidental to the use of residential property, such as the establishment of a home occupation, may be an excludable use of residential property if it might affect the "residential" character of the neighborhood. (See *City of Beverly Hills* v. *Brady, supra,* at p. 857; cf. *City of Warwick* v. *Campbell* (1954) 82 R.I. 300 [107 A.2d 334, 337] (parking of a commercial vehicle on residential premises).) Thus, where there is external evidence of such activity—the altering of a residential

---

[4]Section 101 of the ordinance provides that uses in various zones are restricted "for the *general welfare* of the County of Los Angeles. . . ." (Italics added.)

[5]"The primary purpose of a residence district is safe, healthful, and comfortable family life rather than the development of commercial instincts and the pursuit of pecuniary profits." (*People* v. *Gold, supra.*)

structure, or the storage of commercial vehicles on the property,—it may be a use which is incompatible with a residential neighborhood, and would accordingly be characterized as a "non-residential" use. (*Id.* See also *City of Anchorage, Alaska* v. *Paulk* (1953) 113 F.Supp. 698 [14 Alaska 392] (storage of used motor vehicles); *Building Inspector of Chelmsford* v. *Belleville* (1961) 342 Mass. 216 [172 N.E.2d 695] (storage of heavy equipment); *City of Knoxville* v. *Brown, supra,* 260 S.W.2d 264 (storage of dismantled automobiles).)

■ Apart from those activities deleterious to the purposes behind the establishment of an exclusive residential zone, the residential use of property must be deemed to include the broad sphere of home activities as they existed at common law. These activities include much more than the simple use of a house and grounds for food and shelter, but extend to the use of a home as a social institution, for the *private religious, educational, cultural and recreational advantages of the family.* (*Thomas* v. *Zoning Board of Adjustment* (Tex.Civ.App. 1951) 241 S.W.2d 955, 958-959.) In the *Thomas* case, *supra,* a Texas court of appeal upheld the right of a family to construct and use a swimming pool on residential property. In order to illustrate the range of uses which have been recognized as "residential" uses of property the court reviewed various homestead decisions, as follows: "The case of Panhandle Construction Co. v. Flesher, Tex.Civ.App., 87 S.W.2d 273, 274, illustrates the breadth of activities commonly embraced within the use of property as a homestead. Some lots were separated from the lot on which the residence stood by an alley traveled by the public. These lots were used only as a playground by children of the family who played tennis, basketball, croquet and baseball thereon. These activities were held to be such a use of the separated lots for home purposes as to impress them with the homestead character. The court said: '. . . if such (homestead) claim can be supported by proof of use of same as a stable or lot for a jackass, one based upon use as a playground, *where the health and happiness of children are involved,* ought to be sustained.' [¶] In Ashton v. Ingle, 20 Kan. 670, 27 Am.Dec. 197, the Supreme Court of Kansas said: '. . . the word "homestead" does not include merely the dwelling house, but it also embraces everything connected therewith which may be used and is used for the more perfect enjoyment of the home . . . . The word "residence", like the word "homestead" is not defined merely as the dwelling house but it may also include *everything connected therewith, used to make the home more comfortable and enjoyable.*' [¶] In Rock Island Plow Company v. Alten, 102 Tex. 366, 116 S.W. 1144, our

Supreme Court said that there might be more than one lot constituting the homestead; they might be disconnected, provided, they be used for the purpose of a home, that is, *for such uses as contribute to the enjoyment of the home.* [¶] In Anderson v. Sessions, 93 Tex. 279, 51 S.W. 874, 876, the court said: 'If playgrounds, and shady parks with graveled walks, used only for pleasure or ornamentation, are protected, because used for the purposes of a home, we think that a little garden spot, although in a distant suburb of the town, would not be an improper or an unreasonable addition to the homestead, where it is used for the purpose of supplying the home table with the necessaries and comforts of life . . . .' " (Italics added.)

Our own Supreme Court, in construing a Beverly Hills zoning ordinance, has said that the restrictions on uses of property in a residential zone as a protective measure for the individual owner, are also "included to insure that *a homemaker would not be deprived of the reasonable use of his premises.*" (*City of Beverly Hills* v. *Brady, supra,* 34 Cal.2d 854, 857; italics added.)

It is evident, then, that the use of property for a single-family residence includes those customary activities which make the home more comfortable and enjoyable, such as gardening, certain recreational activity, and the enjoyment of certain hobbies. The scope of such activity is circumscribed only insofar as it may not assume a commercial or public character, or constitute a health or safety hazard to the neighborhood. (See *Hardy* v. *Calhoun* (Tex.Civ.App. 1964) 383 S.W.2d 652, 654.)

■ Given the broad but definable range of activity which is included within the use of property "for a [single-family] residences" it cannot be said that the activities incidental to the maintenance of a single-family residence need to be specified separately. In order for a statute to meet the certainty required under due process standards, it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited. (*Lorenson* v. *Superior Court, supra,* 35 Cal.2d 49, 60.) Reasonable certainty, as indicated earlier, is all that is required. Judicial pronouncements, the common law and common understanding supply the requisite certainty for "residential use" within the meaning of this ordinance. While the residential use terminology in the instant ordinance admittedly is broad, and prohibited conduct very general, this seems

necessary in the nature of its subject matter. (See *People* v. *Beaugez,* 232 Cal.App.2d 650, 657 [43 Cal.Rptr. 28].) Any residue of uncertainty as to prohibited uses of residential property must be resolved by the common sense of the prospective user of property and the good faith of the officials charged with enforcement of the zoning ordinance. A legislative attempt to comprehensively set forth all "residential" uses of property would only defeat the fundamental purpose of this particular zoning ordinance. (See *People* v. *Poulin, supra,* 27 Cal.App.3d 54, 60.) ▮ Accordingly, we hold that sections 202 and 706 of the Los Angeles County zoning ordinance are not vague and uncertain penal provisions, but rather comport with the requirements of due process.

### III

▮ Lastly, appellant seems to contend that the complaint does not sufficiently advise him of what illegal acts he has performed. But an accusatory pleading is sufficient if it is cast in any words sufficient to give the accused notice of the charged offense. (Pen. Code, § 952; *Patterson* v. *Municipal Court,* 17 Cal.App.3d 84, 87 [94 Cal.Rptr. 449].) It appears to us that the activity for which appellant was charged is within the prohibition of sections 202 and 706 of the zoning ordinance, and that a reasonable man would understand such activity to be proscribed in a residential zone. The *storage* of various items on the premises charged in the complaint—inoperable motor vehicles, commercial vehicles, a military generator, vehicle and trailers, and "junk" cannot reasonably be deemed to be a "residential" use of property, or a use which is customarily incidental to the enjoyment of a home. (See *City of Anchorage, Alaska* v. *Paulk, supra,* 113 F.Supp. 698; *Building Inspector of Chelmsford* v. *Belleville, supra,* 172 N.E.2d 695; *City of Warwick* v. *Campbell, supra,* 107 A.2d 334; *City of Knoxville* v. *Brown, supra,* 260 S.W.2d 264.) Certainly, the nature of the storage of such items—whether temporary or permanent, whether in open view or within one of the permissible residential structures, would be factors in determining the propriety of such storage, as a "residential use" of property. But beyond the probable restrictions of the storage of such items as being "nonresidential" there are specific regulations in this ordinance which control such usage of property. First, the storage of other than construction materials (allowed in the accessory use clause) is impliedly prohibited.[6]

---

[6]The doctrine of *Ejusdem Generis*—that the expression of one thing is the exclusion of another (of the same kind)—would seem to support this conclusion. (See, e.g., *City of Knoxville* v. *Brown, supra.*)

Second, the storage of junk,[7] even in a commercially operated junkyard, is strictly regulated, particularly as to its public visibility. (Los Angeles County Ordinance No. 1494, § 778.) Common sense would dictate that the keeping of such paraphernalia goes beyond what a single-family residence might be used for.[8]

The judgment of the superior court dismissing the petition for a writ of prohibition is affirmed.

Kaus, P. J., and Hastings, J., concurred.

---

[7]"Junk" is defined in the ordinance as: "old, secondhand, or scrap ferrous and non-ferrous metals, paper and paper products including roofing and tar paper, cloth and clothing, wood and wood products, manufactured rubber products, rope, manufactured plastic products, paint, manufactured clay and porcelain products, trash, and similar materials, and shall include dismantled machinery, equipment and parts. Junk and salvage shall also include the baling of cardboard boxes, paper and paper cartons." (Los Angeles County Ordinance No. 1494, § 139.33.)

[8]We do not mean to imply that the storage of "junk" in a residential garage is prohibited by the ordinance. While the garage must remain accessible for the parking of a vehicle (§ 742) temporary blockage of the garage or storage of paraphernalia which allows vehicular access would appear to be permissible as a "residential use." Garages have come almost universally to be used as an all purpose storage facility for such things as household items, tools, automobile parts, items related to the carrying on of various hobbies, and innumerable discarded or forgotten items or memorabilia which could only be classified as "junk."