[Crim. No. 13481. Fourth Dist., Div. One. Oct. 8, 1981.]

In re STEPHEN SCARPITTI on Habeas Corpus.

COUNSEL

Waddell & Beccarelli and Thomas R. Waddell for Petitioner.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Anthony Lovett, Deputy District Attorneys, for Respondent.

OPINION

BROWN (Gerald), P. J.—Petitioner Stephen Scarpitti has been convicted of a misdemeanor violation of the San Diego County zoning ordinances because he parks his large commercial truck on his property. Imposition of sentence was suspended and he was granted three years probation on condition (among others) he no longer park his truck there. After an unsuccessful appeal to the appellate department of the superior court, he seeks a writ of habeas corpus here on the ground he has violated no law and his conviction is beyond the municipal court's jurisdiction. He also argues he is the victim of a discriminatory enforcement policy under which only complained-of violations are prosecuted.

Habeas corpus may issue from the Court of Appeal in a misdemeanor case when there is no legal basis for the conviction, as when no statute applies to defendant's conduct (*In re Brown* (1973) 9 Cal.3d 612, 624-625 [108 Cal.Rptr. 465, 510 P.2d 1017]; *In re Zerbe* (1964) 60 Cal.2d 666, 667-668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]).

FACTS

Scarpitti owns a large commercial dump-type truck with his name painted on it, which he uses to earn a living. The record contains no competent evidence of its weight. Pictures show it is probably larger than a recreational van or noncommercial pickup truck. Scarpitti lives on his 1.32 acre residential property located at 2833 Echo Valley Road, Jamul, California, in San Diego County, zoned RR .25, rural/residential with a maximum density of one dwelling unit per four acres. Although Scarpitti attempts to attack the sufficiency of the evidence showing he parks his truck on his property (which evidence consists of brief observations by zoning enforcement officers on three occasions), nevertheless it is clear he does park his truck on the property and wishes to continue to do so, and seeks a writ precisely to have that right.

After unidentified persons allegedly complained to zoning enforcement officials about Scarpitti's truck, an official named Gilshian in the county department of land use and environmental regulation on March 27, 1979, wrote a letter to Scarpitti's counsel outlining reasons why Gilshian thought Scarpitti could not legally park his truck on his property.[1] First the letter cited the general San Diego County Zoning Ordinance,[2] section 1006, which forbids violations of zoning regulations. (Each such violation, under §§ 1006 and 7703(a) is a misdemeanor with possible $500 fine and six months' imprisonment.) Then it summarized the rural residential zoning scheme, which lists specified permitted uses, and then allows other uses which zoning officials in their discretion believe are authorized accessory uses. Next, the letter stated Gilshian's determination it was not a permitted accessory use to park large commercial vehicles exceeding one-ton capacity (or to maintain, store or otherwise use such vehicles) on rural residential property. Finally, the letter stated Gilshian's determination constituted "an administrative decision" which might be appealed to the planning commission pursuant to section 7200 et seq., by a writing filed within 10 days of the letter's date, plus a $50 fee. Scarpitti did not appeal.

Zoning officials came to Scarpitti's property three times in July, August and September of 1979 and took photographs of the truck on his property. At trial these were offered in evidence along with some pictures Scarpitti took of other large commercial trucks parked in the vicinity. At trial the chief zoning enforcement official, Fritch, testified he did not know what Scarpitti's truck weighed, there could well be many other such trucks parked in that neighborhood; this violation was prosecuted because complaints had been received. The department, he said, was too shorthanded to prosecute any violations except when neighbors complained. Fritch said in the seven years he had worked for county zoning enforcement only two or three other cases had been prosecuted involving parking trucks on private property, one possibly in Bonita or Chula Vista.

Fritch refused to identify the persons who complained or the reasons for their complaints. There was no evidence given the truck caused a nuisance in any manner, as by excessive noise, fumes, or blocking of access on other properties.

[1]This is the same James J. Gilshian whose conduct in another matter was reviewed by this court 10 years ago in *Morgan* v. *County of San Diego* (1971) 19 Cal.App.3d 636 [97 Cal.Rptr. 180].

[2]All references are to the San Diego County Zoning Ordinance unless specified.

## THE ORDINANCES

The zoning scheme here, not unusual, permits specified principal uses and accessory uses, the latter defined as necessarily and customarily associated with, and appropriate, incidental, and subordinate to, the principal uses (§ 6152). It is the director's responsibility to determine if a proposed use qualifies as accessory, and such determination may be appealed according to a procedure set forth at section 7200 and following.

In the rural residential zone, the permitted uses are broadly classified as residential, civic, and agricultural. The legislative intent in this zone is to "create and enhance residential areas where agricultural use compatible with a dominant, permanent residential use is desired." (§ 2180.) The area is described as rural or semirural where large lots are desired (*id.*). The permitted agricultural uses specifically include horticulture, tree crops, and row and field crops (§ 2182). Also permitted with limitations, among other uses, are cottage industries, limited packing and processing, winery packing and processing, mining and processing, windmills and silos, tank houses, shops (nonbusiness) and barns (§§ 2182, 2183, 2185).

The only remotely relevant county ordinance which has been found dealing with parking of trucks is section 72.126 of the county code, not a zoning ordinance, which makes it illegal to park commercial vehicles on streets in residential areas. The ordinance defines residential area for its purposes as a highway where the contiguous frontage upon both sides within a quarter-mile distance is occupied by eight or more separate dwelling units (§ 72.126(c)). The ordinance does not apply to parking on private property, nor does it apply to areas such as we have here of density RR .25, since one dwelling unit per four acres is less dense than eight dwelling units on either side of a highway within a linear quarter mile.

## DISCUSSION

### I. *Legality of the Conviction*

If some ordinance here specifically prohibited the parking of trucks of specified type or tonnage upon RR property, we would have a different case. For example, the court in *People* v. *Tolman* (1980) 110 Cal. App.3d Supp. 6 [168 Cal.Rptr. 328], found valid a Temple City ordinance prohibiting the parking for more than 30 minutes in a residential

(R) zone of any vehicle registered for commercial purposes and exceeding three tons, as against claims of hardship, preexisting use, and equal protection violation. Here, however, neither the ordinances nor the character of the rural property involved give any reasonable notice the parking of trucks over one ton is not permitted.

■ In general, land use regulation such as we have here, specifying some uses and permitting ad hoc determinations of valid accessory uses, is authorized as a common, widespread zoning technique. (See *Sechrist v. Municipal Court* (1976) 64 Cal.App.3d 737, 743 [134 Cal.Rptr. 733].) However, the validity of such regulation depends on the reasonableness of the definition of accessory use. For example, in *Sechrist, supra*, the court found storage of junk and inoperable vehicles on the premises in a residential zone was not a permitted accessory use, based on the court's belief such uses are not customarily and ordinarily considered appropriate to single family dwelling. The court referred to "'our common sense, judicial and personal knowledge of what [single-family] dwellings are customarily and ordinarily used for—what the ordinary man of the street would consider a one-family dwelling to be.'" (*Sechrist v. Municipal Court, supra*, 64 Cal.App.3d 737, 745, citation omitted.) Without such reasonable connection, however, as *Sechrist, supra*, stated, no violation could be found, for a conviction would then violate the requirement penal statutes be reasonably certain and give common sense notice of the proscribed activity. Uncertain statutes are defective not only in terms of their notice-giving requirement, but also because they lead to discriminatory enforcement and ex post facto punishment (*Sechrist, supra*, at p. 745; see also *Pryor v. Municipal Court* (1979) 25 Cal.3d 238, 252-253 [158 Cal.Rptr. 330, 599 P.2d 636]).

■ Here is a low density rural zone in which such activities as row crops and tree crops are permitted as of right. As a matter of common knowledge, the growing of row crops frequently involves the use of large vehicles and machinery such as tractors and dump trucks. Other activities are also permitted, on a limited basis, such as mining, packing, and processing, which surely must involve some use of large vehicles and equipment such as jack hammers and chain saws. Since many large vehicles and unwieldy structures are permitted as of right in the zone—including those trucks Scarpitti photographed—there is little aesthetic justification to ban Scarpitti's truck.

The absence of any arguable reason for banning Scarpitti's truck suggests discriminatory and arbitrary law enforcement, one of the danger-

ous effects, as we noted above, of vague statutes. ██ Although zoning officials have broad discretion, they may not act unreasonably or arbitrarily. (See, e.g., *Carlin* v. *City of Palm Springs* (1971) 14 Cal. App.3d 706 [92 Cal.Rptr. 535] [may not prohibit hotel rate signs while permitting all other signs].)

The opinion in *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436], suggests a preference for zoning ordinances which are aimed directly at objectionable evils rather than obliquely at broad categories of uses which may include many innocuous activities. Although this case is not strictly governed by the *Adamson* decision which protected a First Amendment privacy right and also dealt with a specific prohibition, nevertheless many of the evils of the *Adamson* ordinance are incident to this prosecution also. ██ The right to park one's truck on one's property may not rise to the level of importance of the right to choose one's living companions, but it is nevertheless a legitimate and important property right incident to home ownership, particularly when the truck is used to earn a living. Further, the ordinances here do not directly address what evils may result from parking large trucks in the zone. (In fact, they do not even address the parking specifically.) We have no regulation of noise, of emissions, or of use of the public streets, nor do we have density level which would make any such regulation obviously justifiable. Nor would a common sense evaluation of the rural residential neighborhood here lead one to believe such parking was illegal. In short, this administrative determination severely limits Scarpitti's property rights, has no discernable, much less legitimate, object, and is in fact the very essence of arbitrary governmental regulation, sans regulation, sans reason, sans anything.[3]

Even in *Tolman, supra*, upholding the specific Temple City ordinance, one judge dissented, finding the regulation overbroad, burdensome and a violation of equal protection. He said no difference could be demonstrated between parking large commercial trucks and smaller recreational vehicles, or at least, no difference which rationally justified prohibiting the former. He pointed out zoning ordinances must be narrowly drawn (*Carlin* v. *City of Palm Springs, supra*, 14 Cal.App.3d 706), and the exclusion of commercial activities in residential zones must not be arbitrary, discriminatory or overbroad (*People* v. *Goodspeed* (1948) 85 Cal.App.2d Supp. 821 [192 P.2d 130]). The majority

---

[3]Cf. Shakespeare, As You Like It, act II, scene VII, from the last of the seven ages of man, "sans teeth, sans eyes, sans taste, sans everything."

disagreed, relying on the *Metromedia, Inc.* v. *City of San Diego* from our Supreme Court (26 Cal.3d 848 [164 Cal.Rptr. 510, 610 P.2d 407]) permitting reasonable restriction of commercial activity (a principle not affected by the opinion of the United States Supreme Court reversing the decision in *Metromedia, supra,* 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882]). However, putting aside the fact we have no specific ordinance here, and comparing the facts here and in *Tolman,* we note it is much more reasonable to forbid parking trucks over three tons in an R zone than it is to prevent parking trucks over one ton in a RR .25 zone on private property where row crops are grown and barns, windmills, mines and silos are allowed. Even if the Legislature had here specifically prohibited the conduct involved, the constitutionality of such prohibition would be dubious, to say the least. One can conceive of no evil caused by Scarpitti's truck which is not already allowed in the zone: some motorcycles (not BMWs) and chain saws may be noisier, campers and vans less beautiful, at least in some beholders' eyes.

No punishment without a law. (*Nulla poena sine lege.* See *Mathews* v. *Superior Court* (1981) 119 Cal.App.3d 309, 310 [173 Cal.Rptr. 820]) We conclude Scarpitti has violated no law and his conviction is beyond the jurisdiction of the municipal court and must be reversed.

II. *Exhaustion of Administrative Remedies*

The People contend Scarpitti's failure to take an administrative appeal to the planning commission prevents his now seeking judicial relief. The doctrine of exhaustion of administrative remedies is designed to protect courts from doing the work of administrative agencies, and requires litigants first to give the agency an opportunity to rule on the problem where the agency is capable of doing so and the administrative remedy is effective. (See gen., 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 182; *Superior Strut & Hanger Co.* v. *Port of Oakland* (1977) 72 Cal.App.3d 987, 1002 [140 Cal.Rptr. 515]; *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 342 [124 Cal.Rptr. 513, 540 P.2d 609]; *Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82 [143 Cal.Rptr. 441]; *Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533].) The application of the doctrine is jurisdictional in California (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]).

Although there is some California authority stating failure to exhaust administrative remedies may preclude criminal defenses (*People* v. *Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52 [21 Cal.Rptr. 875]), the United States Supreme Court has taken the position "this Court has never held that a general principle of exhaustion could foreclose a criminal defendant from asserting constitutional invalidity of the statute under which she is being prosecuted." (*Moore* v. *East Cleveland* (1977) 431 U.S. 494, 497, fn. 5 [52 L.Ed.2d 531, 536, 97 S.Ct. 1932].) Similarly, we find no California case which holds failure to exhaust a zoning remedy precludes defending a criminal charge by saying no law prevents the conduct. ▉ Here the best the planning commission could have done would have been to declare, as a matter of law, no violation existed—a pure question of law this court is as well equipped to make as is the agency, depending not on the existence of unique facts, but on the absence of any valid regulation.

Although from our point of view it would have been more convenient and time saving had Scarpitti pursued an administrative appeal, nevertheless our greater convenience is no reason to deny him the defense no law prohibited his conduct.

*Conclusion*

Let a writ of habeas corpus issue nullifying the conviction of Scarpitti.

Cologne, J., and Staniforth, J., concurred.

On November 9, 1981, the opinion was modified to read as printed above.