[No. A023302. First Dist., Div. Two. Nov. 7, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
THO NGOC NGUYEN, Defendant and Appellant.

688

## COUNSEL

Noah Sherman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Derald Granberg and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SMITH, J.**—Defendant Tho Ngoc Nguyen was convicted upon his plea of guilty to a two-count information alleging that on October 12, 1982, he unlawfully took salmon and striped bass by use of a gill net (Fish & G. Code, § 8685.5) and possessed for sale salmon and striped bass so taken (Fish & G. Code, § 8685.6).[1] He withdrew a previous plea of not guilty and pled guilty to the charges after the trial court overruled his demurrer to the information. Sentenced on June 29, 1983, to 3 years probation with a 240-day county jail term condition, defendant filed a timely notice of appeal on July 5.

His basis for the overruled demurrer and for this appeal, by which he challenges that ruling, is essentially that the absence of a statutory or commonly accepted definition of "gill net" (1) renders the code sections uncon-

---

[1]Section 8685.5 of the Fish and Game Code provides: "Notwithstanding any other provision of law, gill nets may not be used to take salmon, steelhead, or striped bass."

Section 8685.6 of the same code provides: "It is unlawful to sell or possess for sale any salmon, steelhead, or striped bass which were taken in California waters by the use of a gill net."

stitutionally vague; (2) deprived him of constitutionally adequate notice of the nature of the charges in the information, which utilized the statutory term; and (3) rendered the information demurrable on statutory grounds that it failed to state a "public offense" (Pen. Code, §§ 950, 952, 1004, subd. 4). We will reject these arguments.

## BACKGROUND

While on "gill net patrol" about 10:30 p.m. on October 12, 1982, state Department of Fish and Game Warden James Bond and a federal agent named Jones began a surveillance of two individuals they spotted at Point Isabel, on the bay just south of Richmond. As Bond and Jones watched through binoculars and a "starlight scope," they saw the two individuals board an inflatable raft on the point and head across the water toward a breakwater or "rock wall." One individual rowed with a wooden paddle while the other appeared to be tending a net over the side of the raft as they went along. When the raft returned to the point, its two occupants disembarked. A third individual joined them and appeared to serve as a lookout over the next hour or so while the other two rested on some rocks. Afterward, all three joined efforts at the water's edge in pulling a net onto land, pulling a number of striped bass and other fish out of the net and placing them in gunnysacks. At this point, Bond and Jones, along with several other wardens who had joined the surveillance, revealed and identified themselves, ordering the suspects to stop and announcing that they were under arrest. The three suspects conversed among themselves briefly and then ran off. As the wardens closed in, the three took to the water and swam off toward the rock wall, despite commands to stop. Bond and another warden, Miles Young, then boarded the abandoned raft and made their way across to the rock wall where they deflated the raft to prevent anyone from using it and began a systematic search of the wall.

Working their way down the wall, they eventually discovered and arrested defendant and Do Thanh Long (a codefendant in the action below), who they found half submerged and suffering from cold beneath some rocks. The third suspect was not found.

The search also revealed a second net, tied to the rock wall, and the wardens hauled the net in. Both nets, one 900 feet and the other 1,000 feet long, were seized, as were a total of 49 striped bass and 1 salmon extracted from the nets. The mesh size of the nets was four and one-half inches, and both were of a design or "make" of net commonly used for gillnetting striped bass. Neither of the arrestees had produced a license or permit when asked to show one.

Warden Young took a number of fish from the seized nets and found all to have gill net markings, which he described in testimony as dark "badges" of hemorrhaging around the fish's body at a point at or behind the gill covers.

Defendant's arrest that night for unlawful gill net fishing was not his first. He had been arrested two months earlier at a nearby Alameda County site for gillnetting 131 striped bass, and his preliminary examination on the resulting charge (Fish & G. Code, § 8685.5) had been held (coincidentally, with warden Young present) just the week before the incident here at issue.

### APPEAL

Nowhere in the Fish and Game Code is the term "gill net" specifically defined. Must sections 8685.5 and 8685.6,[2] which predicate criminal liability on certain proscribed uses of a gill net, therefore be invalidated under the void-for-vagueness doctrine? We will conclude not—first because the term gill net has a long established and commonly accepted meaning that provides fair warning, and second, because defendant's conduct in this case was squarely encompassed within a reasonable and practical construction of the term. As will be seen, this conclusion effectively disposes of defendant's other contentions as well since they depend entirely on the asserted vagueness of the term.

### I

"Both article I, section 13, of the California Constitution and the Fourteenth Amendment to the United States Constitution declare that no person shall be deprived of life, liberty or property without due process of law. It has been recognized for over 80 years that due process requires inter alia some level of definiteness in criminal statutes. [Citation.] ■■■ Today it is established that due process requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and ■■ a standard for police enforcement and for ascertainment of guilt. [Citations.]" (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269, fn. omitted [198 Cal.Rptr. 145, 673 P.2d 732]; *Kolender* v. *Lawson* (1983) 461 U.S. 352, 357-358 [75 L.Ed.2d 903, 909, 103 S.Ct. 1855, 1858-1859] [viewing the establishment of guidelines for law enforcement as "the more important aspect of vagueness doctrine"].)

The first enumerated component, often called "fair notice" or "fair warning," focuses on the degree of certainty necessary for an ordinary person

---

[2]All undesignated section references hereinafter are to the Fish and Game Code.

to conform his or her conduct to the requirements of the law. ■ " 'Fair notice' requires only that a violation be described with a ' "reasonable degree of certainty" ' . . . so that 'ordinary people can understand what conduct is prohibited.' . . . The notice provided must be such that prosecution does not 'trap the innocent' without 'fair warning.' . . ." (*Burg* v. *Municipal Court, supra,* 35 Cal.3d 257, 270-271, citations omitted.)

■ The second component focuses on the adequacy of standards or guidelines for the law's application. "Where the legislature fails to provide . . . minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' . . ." (*Kolender* v. *Lawson, supra,* 461 U.S. 352, 357-358 [75 L.Ed.2d 903, 909, 103 S.Ct. 1855, 1858-1859], fn. and citations omitted.)

■ However, "lack of precision is not itself offensive to the requirements of due process. . . ." (*Roth* v. *United States* (1957) 354 U.S. 476, 491 [1 L.Ed.2d 1498, 1510-1511, 77 S.Ct. 1304].) Even where persons of ordinary intelligence may differ with respect to the meaning of a statutory term, the statute is not necessarily void on its face. Such statutes "must be given a reasonable and practical construction in accordance with the probable intent of the Legislature. [Citations.] ' " 'Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.' . . . It will be upheld if its terms may be made reasonably certain by reference to other definable sources." ' [Citations.]" (*County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 672-673 [114 Cal.Rptr. 345, 522 P.2d 1345].) "[R]equisite standards of certainty can [often] be fleshed out from otherwise vague statutory language by reference to any of the following sources: (1) long established or commonly accepted usage; (2) usage at common law; (3) judicial interpretations of the statutory language or of similar language; (4) legislative history or purpose. [Citation.]" (*Sechrist* v. *Municipal Court* (1976) 64 Cal.App.3d 737, 745 [134 Cal.Rptr. 733].)

■ Finally, "[i]n examining statutes challenged on vagueness grounds, courts have looked not merely at the hypothetical cases to which the statute has uncertain applicability, but also at the act allegedly committed by the charged defendant. The presumptive validity of a legislative act militates against invalidating a statute merely '. . . because difficulty is found in determining whether certain marginal offenses fall within . . . [its] language. [¶] Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that *his* contemplated conduct is proscribed.' [Citations.]" (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].) We are therefore not obligated to consider every conceivable situation which

might arise under the statutory language, so long as that language may be given the reasonable and practical construction spoken of above. In such circumstances, individuals "cannot complain of the vagueness of a statute if the conduct with which they are charged falls clearly within its bounds. . . ." (*Ibid.*)

■ Turning first to the "fair notice" component of the vagueness doctrine, we note that, aside from defendant's claimed difficulty in ascertaining what is or is not a *fishing device* known as a gill net,[3] he does not claim that he is at all uncertain as to what constitutes the *fishing technique* known as gillnetting. This distinction, we believe, is critical to vagueness analysis in this case. The challenged code sections plainly prohibit all gillnetting of striped bass, steelhead and salmon (see fn. 1, *ante*),[4] and we are confident that one of ordinary intelligence having fair notice of the species of fish protected, and of the prohibited method of taking them, will in the exercise of common sense have fair warning that use of certain nets may result in the forbidden taking of those fish by that method.

All definitions of the term "gill net" of which we are aware describe, in more or less detail, this method of catching fish: A fish swims into a suspended net whose mesh is just large enough to allow the fish's head, but not its body, to pass through; upon trying to extricate itself, the fish is caught on the mesh by its gill covers and is then unable to move forward or backward. (See, e.g., Webster's New Collegiate Dict. (3d ed. 1976) p. 485; *Puyallup Tribe* v. *Dept. of Game* (1968) 391 U.S. 392, 400, fns. 12 & 13 [20 L.Ed.2d 689, 694-695, 88 S.Ct. 1725]; *Petition of Department of Conservation* (1946) 316 Mich. 169 [25 N.W.2d 154, 155]; *Hilborn* v.

[3]While the code does not specifically and comprehensively define gill nets, it does provide many clues as to their use, identity and construction. The code frequently distinguishes between set gill nets and drift gill nets, often imposing specific restrictions on their use, mesh composition and size, depth, length and placement which vary from district to district. (See, e.g., §§ 8671, 8688-8689, 8691, 8693, 8695-8696.) For example, in district 12, where defendant was apprehended, drift gill nets are permitted for the taking of certain small fish, subject to depth and other restrictions, including a maximum mesh size of two and one-half inches. (§ 8689.) By process of elimination, gill nets are indirectly defined by code sections that give general definitions for other types of nets, including the trammel net (§ 8720), round haul net (§ 8750), bait net (§ 8780), beach net (§ 8800), trawl net (§ 8830), dip net (§ 8870) and baited hoop net (§ 8890). Also, "[a]ny line used on a gill net which shall tend to cause the webbing of such gill net to bag or hang slack shall cause such net to lose its identity as a gill net and become a trammel net." (§ 8700.)

[4]Sections 8685.5 and 8685.6 were added to the Fish and Game Code in 1980 as part of an urgency statute enacted "[i]n order to protect and properly utilize . . . salmon, steelhead, and striped bass resources, . . ." (Stats. 1980, ch. 393, §§ 1.5, 2, 6, p. 775.) While code section 8685.5 flatly prohibits gillnetting of those three species of fish ("[n]otwithstanding any other provision of law"), gillnetting is otherwise allowed by the code, but subject to permit regulations designed to insure "that fishermen who use gill nets . . . be experienced in the[ir] use . . . ." (§ 8680; see also §§ 8680.5, 8681-8682.)

*Smith* (1907) 148 Mich. 474 [111 N.W. 1082, 1083]; *State* v. *Lewis* (1893) 134 Ind. 250 [33 N.E. 1024, 1025], quoting contemporary dictionaries.) The preliminary hearing testimony of Wardens Bond and Young in this case was to the same effect. To this extent, then, there can be no claim of vagueness, for there is a commonly accepted and readily ascertainable meaning. In fact, the very words "gillnetting" or "gill net" imply a gill net's function.

Defendant is not satisfied, however, with a functional definition. In essence, he urges that the statute (or common understanding) must supply physical dimensions, float configuration, mesh size, positioning and other information before he can tell with reasonable certainty how to conduct himself. He points not only to the lack of such specifics but also to the testimony of Bond and Young, who each indicated that such criteria would not necessarily be determinative in deciding what is or is not a gill net, and that it was mainly the use to which the net was put that was determinative.

The argument is hypertechnical and leaves behind common sense. Having fair notice that gillnetting striped bass and salmon was proscribed by statute and that gillnetting is accomplished by utilizing a net having mesh the size needed to snare such fish by their gills, defendant had only to make a common sense estimate of what size mesh length (see § 8602) might result in unlawful gillnetting. Making that estimate is really the only plausible area of uncertainty and one which, we conclude, does not violate constitutional standards. As was pointed out in testimony, the gillnetting process, which uses a net of uniform mesh size, is necessarily size rather than species selective so that mesh size is critical. (See *Puyallup Tribe* v. *Dept. of Game, supra,* 391 U.S. 392, 400, fn. 13 [20 L.Ed.2d 689, 695]; *Petition of Department of Conservation, supra,* 25 N.W.2d 154, 155.) This means, of course, that it would first be necessary to ascertain the approximate range of size to be expected for a particular species of fish, but we assume that such information is either already known by one intending to fish by net or readily available if not actually known. Also, there is no serious problem posed by the fact that a net used or usable as a gill net might in some other configuration become, depending on its use, a different type of net under the code (see fn. 3, *ante*; § 8700). "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold [statutory] language too ambiguous to define a criminal offense. [Citation.]" (*United States* v. *Petrillo* (1947) 332 U.S. 1, 7 [91 L.Ed. 1877, 1883, 67 S.Ct. 1538].)

For those reasons, we conclude that a combination of information provided by the Fish and Game Code sections themselves plus a common sense application of information available from external sources supplies the req-

uisite certainty to overcome the lack of a comprehensive statutory definition of "gill net." (Cf. *People* v. *Wilkins* (1972) 27 Cal.App.3d 763, 772-773 [104 Cal.Rptr. 89].)

For similar reasons, we conclude that adequate guidelines exist to discourage arbitrary or discriminatory enforcement. Defendant would perhaps have a stronger argument had he been charged under one of the several code sections which make it unlawful in certain areas to merely possess a gill net, without regard to whether any actual gillnetting has taken place (see, e.g., §§ 8663 [possession in any boat], 8664 [possession is prima facie evidence of unlawful use], 8669 [possession during closed season], 8670 and 8685 [possession on any boat]), but the charged violations in this case proscribe the *actual taking* of fish by gillnetting and the possession for sale of fish so *taken.* Law enforcement personnel and juries therefore need not guess at the gillnetting potential of the net in a given case, for its potential will already have been proven to a certainty.

A second reason for rejecting defendant's facial attack on the statute is that the conduct for which he was charged falls squarely within the proscription of the provisions. (*Bowland* v. *Municipal Court, supra,* 18 Cal.3d 479, 492; *People* v. *Weaver* (1983) 147 Cal.App.3d Supp. 23, 36 [197 Cal.Rptr. 521].) He was clearly gill net fishing, by any definition, and fully appreciated that his conduct was unlawful. Not only did he have *fair notice,* as is required by due process, he had *actual notice*: he had been arrested and charged for an identical offense two months earlier. He thus had far better notice than that which was constitutionally mandated. (See discussion in *Burg* v. *Municipal Court, supra,* 35 Cal.3d 257, 269-270 & fns. 15, 17.)

## II

Defendant's remaining two arguments against the overruling of his demurrer are answered by the foregoing analysis and conclusions.

First, he contends that the information gave him inadequate notice against what he must defend. He relies on the rule that although literal compliance with pleading requirements is achieved by couching the accusatory pleading in statutory terms (Pen. Code, § 952), such a pleading will nonetheless be vulnerable to demurrer (Pen. Code, § 1004, subd. 2) where the statutory language itself does not give constitutionally adequate notice of the offense. (*People* v. *Jordan* (1971) 19 Cal.App.3d 362, 369 [97 Cal.Rptr. 570].) However, the claimed inadequacy of notice here is the information's use of the statutory term "gill net," which we have determined is not fatally vague or uncertain.

Second, he contends that the demurrer should have been sustained in that the information failed to state facts constituting a public offense (Pen. Code, § 1004, subd. 4), but this contention too rests on the asserted vagueness of the term "gill net" and so must also be rejected.

The judgment (order of probation) is affirmed.

Kline, P. J., and Rouse, J., concurred.